(Decided 23rd July, 1878.)

---

# W. S. FORWOOD *vs.* STATE OF MARYLAND.

*Selling liquor without license—Trader closing business may sell old stock of liquors without renewing license—How such sales must be made—Code, Art. 56, sec. 5—Instructions by the Court to the Jury in Criminal Cases.*

W. S. F. carried on a hotel at Bel-Air, and was licensed to sell liquors. On 1st May, 1877, he discontinued keeping the hotel, but having on hand an old stock of liquors, proceeded to sell the same without renewing his license to sell, the sales being made as alleged by the traverser in his pleas, for the purpose of getting rid of the old stock and closing business, and not with a view to profit in the prosecution of a regular trade. The sales were made at cost, in quantities not less than half a pint and extended over a period of about six months W. S. F. was indicted for selling spirituous liquors without license in the prosecution of a regular trade. HELD :

1st. That where a trader or keeper of an ordinary, whose license has expired, discontinues his business, he may, without renewing his license, lawfully sell and dispose of his chattels, including his stock of goods remaining on hand. If this is done *in good faith*, not in the prosecution of a regular business, the case would fall within the exception made by Art. 56, sec. 5, of the Code.

2nd. That a trader under such circumstances could not be allowed to go on without a license to sell out his stock of merchandise by retail to such customers as might choose to buy, and then claim protection under Art. 56, sec. 5, of the Code.

Forwood *vs.* State.

3rd. That where a trader under such circumstances sells out his stock of liquors at public auction with his other chattels, or disposes of them at private sale by wholesale and at one time, in good faith, for the purpose of closing his business and not in the prosecution of a regular trade, such acts would not constitute an infraction of the license laws.

4th. Though the jury in criminal cases are judges both of the law and the facts, and though the Court is not obliged to give them instructions in such cases, it is within the discretion of the Court to give instructions to the jury, to which they are bound to give only such weight as in their judgment they see proper.

APPEAL from the Circuit Court for Harford County.

The case is fully stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*Henry W. Archer, Stevenson Archer, Herman Stump, Jr., Geo. Y. Maynadier* and *Wm. Young,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the State.

BARTOL, C. J., delivered the opinion of the Court.

The indictment in this case charges the appellant with a violation of the revenue laws of the State, in selling one-half pint of whiskey, in July 1877, to one James M. Reynolds, without having first obtained a license so to do; and also with selling to the same person, without a license, spirituous liquors in quantities not less than a pint.

The traverser pleaded *not guilty;* he also pleaded *four* other pleas numbered in the record 2nd, 3rd, 4th and 5th pleas; these allege substantially that prior to the first day of May 1877, the traverser was a duly licensed hotel keeper, and as such had on hand at that time a stock of liquors unsold, that after the said first day of May 1877, he dis-

continued his said business and purchased no other liquors, surrendered the lease which he held as tenant of said hotel property, and proceeded to close out his said stock of liquors, and sold the same at cost, and not with a view to profit in the prosecution of a regular trade or business, and that the sale of liquor charged in the indictment was part of the said stock of liquors acquired by the traverser prior to the first day of May 1877, and the sale thereof was made at cost, not with a view to profit in the prosecution of a regular trade or business.

To these special pleas the State demurred; and the demurrer was sustained. There being no final judgment in the case, the ruling of the Circuit Court upon the demurrer is not regularly before us for review on this appeal; but our opinion thereon will be sufficiently indicated in disposing of the bills of exceptions, which incidentally present the same question as that raised by the demurrer.

The *first* and *second* bills of exception were taken by the traverser to the rejection by the Court of testimony offered by him.

The State proved by Reynolds, the prosecuting witness, that from the first day of May 1877, and up to and after the date mentioned in the indictment, the traverser was the keeper of a hotel in Bel-Air, that sometime in July 1877, the witness asked traverser to sell him a drink of his best whiskey; traverser said he could not sell him a drink, but could sell him a bottle, witness said he did not want a whole bottle, traverser said he would sell *half a pint*, which was put in a bottle, and witness paid for it 25 or 30 cents; that he and two others then drank out of the bottle, from glasses furnished by traverser at witness' request, then left the balance there. That he had seen parties get whiskey there, and driving in and out, and he supposed he entertained them as usual.

Witness stated on cross-examination traverser told him, at the time he got the half pint, that he could not sell any

one a drink, that he had no license, but had taken the
advice of counsel, that he had a right to sell out his old
stock, and was selling it out at cost.  Witness said " he
meant when he said that traverser kept a hotel, that he
saw persons driving in, whom he supposed traverser enter-
tained as usual.  He did not mean to say that traverser
kept a hotel for the sale of liquor.''

Then witness was asked by defendant's counsel whether
traverser since the first of May 1877, and before the alleged
sale, had not sold out his household furniture and bar-room
fixtures, formerly used by him in his business at that
place ? and whether witness did not notice such change in
the bar-room and furniture ?

The State objected to this question, the Court sustained
the objection and traverser excepted.

The State then proved, by other witnesses, that traverser
had sold, during the period covered by the indictment, in
quantities of a half pint, and upwards to gallons, and to
any and all persons who called for it, but never by the
glass, always refusing so to do, and saying at the time of the
sales were made that he was selling out his old remaining
stock at cost, under the advice of his counsel, and without
any intent to evade or defraud the Revenue Laws of the
State, that persons frequently called for drinks, but traver-
ser always refused, and either accommodated them by
measure, or sent them away ; and upon this evidence the
State closed its case.

Whereupon the traverser was called as a witness, and
proved that he ceased business, as a licensed ordinary
keeper, on the first of May 1877, and then offered to prove
that his lease of the property, on which he kept said ordi-
nary, had expired and been surrendered ; also that at that
time, he had an old stock of liquors on hand remaining
unsold, which together with his furniture and fixtures he
advertised, and offered to sell at public auction, and sold
the furniture and fixtures, but was unable to sell said stock

of liquors, for want of bidders   He further offered to prove that he had not been from that time, and during the period covered by the indictment, engaged in any business, but was seeking a new home, and other employment. That he did not in any way add to his old stock, and that the selling of liquor charged in the indictment was part of said old stock, which he sold at actual cost.

Traverser then offered to prove by the Hon. Stevenson Archer, the agent and attorney of the owner of the hotel property, that the traverser's lease of the same had expired, and been surrendered, that witness had tried to procure a new tenant, and that shortly after the surrender of the lease, and before the sale charged, the traverser authorized him to sell his entire old stock of liquors at cost, showing his bills and receipts therefor from the merchants from whom he had purchased.

Upon the objection of the State, the Court refused to admit the testimony so offered, and this ruling forms the subject of the second bill of exceptions.

The appellant's counsel contend that the evidence ought to have been allowed to go to the jury, to prove that the sales were not made with a view to profit in the prosecution of a regular business, and to bring the case within the exception provided in the *Code, Art.* 56, *sec.* 5.

They say in their brief " that the question, though now coming up for the first time in the Appellate Court, has been frequently passed upon by the Circuit Courts, and old County Courts of the State.   That Chief Justice ARCHER and others have uniformly decided that a party discontinuing a business, which required a license, had the right to sell off and dispose of his remaining stock, provided it was not done with a view to profit in the prosecution of a regular trade or business."

No case has been cited by the counsel, and we have not the means of verifying the correctness of their report of the decisions by Chief Justice ARCHER and others.   We

have no doubt however that where a trader or keeper of an ordinary, whose license has expired, discontinues his business, he may, without renewing his license, lawfully sell and dispose of his chattels, including his stock of goods remaining on hand. If this is done *in good faith,* not in the prosecution of a regular business, the case would fall within the exception named in the Code. But he could not be allowed to go on without a license, to sell out his stock of merchandise by retail to such customers as might buy, and claim protection under the fifth section, Art. 56, of the Code. In our judgment the evidence offered by the traverser did not in any manner tend to bring this case within the exception.

His license expired on the 1st of May 1877. The proof on the part of the State was that for six months thereafter he continued in the occupation of the same premises, selling ardent spirits to any and all persons who called for them in quantities of a half pint and upwards, and that in *July* of that year he sold a half pint to the prosecuting witness as charged in the indictment.

The offence of selling spirituous liquor without a license was thus distinctly proved. Now to bring his case within the exception, under section 5th, Article 56, the appellant offered evidence "that his lease of the premises occupied by him had expired, that he had sold at auction his house-hold furniture and bar fixtures, and offered at the same time for sale his stock of liquors on hand, but failed to find a purchaser; that then he continued to sell them to such customers as called for them, not by the single glass, but in quantities of half a pint or more, that he did not increase his supply, but sold only of the old stock, and at cost.

If the appellant had sold his stock of liquors at public auction, with his other chattels, we think it would not have been a breach of the law. Or if, failing in that, he had disposed of them at private sale, by wholesale and at

one time in good faith, solely for the purpose of closing his business, and not in the continued prosecution of his business, this would not have been in our judgment any infraction of the license laws.

But the evidence offered on the part of the appellant, so far from being any answer to the charge in the indictment, or tending to bring his case within the exception on which he relies, shows that the sales proved were made in the prosecution of a regular business. The fact that he sold at cost, or supposed he had a lawful right to sell in that way and acted under the advice of counsel, is no answer to the charge. We think, looking to the case as disclosed by the record, that the evidence offered by the appellant was immaterial, and that it was not error to reject it. The policy of the law is clearly to prevent the sale of spirituous liquors without a license at retail in the manner described in the testimony.

The third bill of exceptions was taken to the instructions given by the Court to the jury upon the questions of law involved.

These instructions were given at the request of the jury, who were at the same time instructed that in criminal cases, they being judges of the law and of the facts, they were not bound by any instructions of the Court, but were only to give such instruction such weight as in their judgment they saw proper.

It was within the discretion of the Court to give instructions to the jury, though we have said they were not obliged to do so. *Wheeler vs. State,* 42 *Md.*, 569 ; *Broll vs. State,* 45 *Md.*, 359.

It has been contended by the attorney-general that instructions so given are not "*rulings*" within the meaning of the *Act of* 1872, *ch.* 316, subject to be reviewed upon appeal. It is not necessary to express any opinion on that point in this case ; because in our judgment the instructions given to the jury were correct ; they are in accord-

ance with the views we have expressed in disposing of the *first* and *second* bills of exceptions; and even if they were properly before us for review, there would be no ground for reversal.

> *Rulings affirmed, and*
> *cause remanded.*

(Decided 24th July, 1878.)