STATE *vs.* JAMES A. FOSTER.

PROVIDENCE—JULY 2, 1900.

PRESENT : Stiness, C. J., Tillinghast, Douglas, and Dubois, JJ.

(1)  *Construction of Statutes.  Itinerant Venders.*

F., a merchant with a permanent place of business in the city of P., in this State, for twenty-four years, temporarily opened a store in the city of W. for the sale of his goods, and sold certain merchandise without having complied with the provisions of Gen. Laws R. I. cap. 163, as amended by Pub. Laws R. I. cap. 326, " Of itinerant venders ":—

*Held*, that F. was an itinerant vender within the provisions of the act.

*Held*, further, that the fact that F. offered to comply with the act and was advised by the general treasurer of the State that he was not within its provisions was not a defence.

Where a statute contains its own definition of words used therein, the court has no occasion nor, the language being plain, the right to look elsewhere for their meaning.

Although penal statutes are to receive a strict interpretation and general words restrained for the benefit of him against whom the penalty is inflicted, yet when the intention of the legislature is obvious and the language plain, no room is left for judicial construction.

(2)  *Constitutional Law.*

*Held*, further, that the act was not unconstitutional, as being in restraint of

trade and repugnant to the fourteenth amendment to the constitution of the United States. It falls within the police power of the State, and although the restrictions imposed upon trade by its provisions are very stringent, yet, in view of the very broad discretion vested in the legislature to pass laws pertaining to the general welfare, it cannot be regarded as clearly obnoxious to the constitution, and hence the doubt must be resolved in favor of the validity of the act.

(3)   *Constitutional Law.   Class Legislation.*

The act is not repugnant to the fourteenth amendment of the constitution of the United States forbidding any State to deny its citizens the equal protection of the laws, in that it discriminates against a particular class of persons, and is therefore objectionable as class legislation.

(4)   *Constitutional Law.   Cruel Punishments.*

The penalty prescribed by the statute, of a fine of not less than $100, nor more than $250, and imprisonment for not less than ten, nor more than thirty days, is not violative of article 1, section 8, of the constitution as being cruel or excessive.

INDICTMENT charging defendant with a violation of chapter 163 of the General Laws and its amendments.   The facts appear in the opinion.   Heard upon petition of defendant for a new trial, and upon constitutional questions.   New trial denied, and act declared constitutional.

TILLINGHAST, J.   The defendant, who has been convicted of selling goods, wares, and merchandise as an "itinerant vender," without first obtaining a license therefor as required by Gen. Laws R. I. cap. 163, as amended by Pub. Laws R. I. cap. 326, now petitions for a new trial on the ground that the verdict is against the evidence, and also on the ground of certain alleged erroneous rulings on the part of the trial court.   He also claims that said statute is unconstitutional.

The material facts which appeared in evidence in the case, and which are not in dispute, are as follows:

(1)   The defendant is a merchant in the city of Providence, and has had a permanent place of business there for twenty-four years.   He has also been a citizen of this State during all of said time.   For several years past, at about Christmas-time he has temporarily opened a store at Woonsocket for the sale of his goods.   In December, 1897, in pursuance of this custom,

the defendant hired a store there for the exhibition and sale
of his goods, and sold certain articles of merchandise as set
out in the indictment, not having first obtained a State and
local license to make such sales.    After the testimony, which
was very brief, was all in, the defendant, by his counsel,
requested the court to direct a verdict in his favor upon the
ground that the evidence did not show that he had violated
the statute in question ; that, being a permanent resident and
merchant of this State, he had a right to temporarily open a
store in Woonsocket for the sale of his goods, and that such
conduct did not constitute him an " itinerant vender " within
the meaning of said statute ; but the court refused so to rule,
and instructed the jury that such a sale as that shown in
evidence was in violation of the statute.    To this ruling the
defendant duly excepted.    The defendant also claimed at the
trial that the statute was unconstitutional.

Section 1 of the statute, as amended, provides that " Every
itinerant vender who shall sell or expose for sale, at public
auction or private sale, any goods, wares, and merchandise
without state and local licenses therefor, issued as herein-
after provided, shall be guilty of a misdemeanor, and shall
be punished by a fine of not less than one hundred nor more
than two hundred and fifty dollars, and by imprisonment not
less than ten nor more than thirty days."    And section 14
provides that " The words ' itinerant vender,' for the pur-
poses of this chapter, shall be construed to mean and include
all persons, both principals and agents, who engage in a tem-
porary or transient business in this state, either in one locality
or in traveling from place to place selling goods, wares, and
merchandise, and who, for the purposes of carrying on such
business, hire, lease, or occupy any building or structure for
the exhibition and sale of such goods, wares, and merchan-
dise."

The defendant contends that the statute was evidently not
intended to apply to persons having a regular and permanent
place of business in this State who should from time to time
in the course of their business and in connection therewith

carry on a temporary business elsewhere within the State; but that its object was to protect the citizens of the State from the imposition of irresponsible "tramp merchants," who have no permanent and regular place of business in this State, but who temporarily locate in a given place in disposing of their goods and merchandise.

A careful examination of the statute under consideration, however, shows that such a construction as that contended for would materially limit and restrict the plain meaning thereof. And while the act may have been framed with the special view of accomplishing the object specified by the defendant, its language is too broad to confine it thereto. It contains its own definition of the words "itinerant vender," and hence we have no occasion nor, indeed, the language being entirely plain, have we the right to look elsewhere for their meaning. It provides that they "*shall be construed to mean and include all persons, both principals and agents, who engage in a temporary or transient business in this State.*" And, as said by the court in *Com.* v. *Crowell,* 156 Mass. 215, "A party may be engaged in selling temporarily or transiently in one city or town, while having a permanent place of business in another. So far as he is engaged in selling temporarily or transiently, he comes within the prohibition of the statute, without any regard to the fact that he is also carrying on an established and permanent business elsewhere. Whether his whole business is selling temporarily or transiently, or whether he does it more or less frequently in connection with a permanent business at a fixed place or places, does not matter. He comes in either case within the statute."

Again, the evil sought to be guarded against by the statute would not be removed by limiting the operation thereof to persons who have no permanent place of business in this State. For it would be just as detrimental to the established business of a given locality for a person who has a permanent place of business in some other part of the State to temporarily locate there as it would if such person had no place of business else-

where in the State, or even as it would if he came from another State. And of course the act must be held to apply to non-residents who come here to do business, as well as to residents of the State, else it would clearly be unconstitutional. See Art. 4, § 2, of the Const. of the United States; *Corson* v. *State*, 57 Md. 263; *State* v. *Medbury*, 3 R. I. 138. In other words, the main objects of the statute clearly being to so regu-late the carrying on of temporary commercial business as to protect local trades-people from what is evidently deemed by the General Assembly to be unfair competition, namely, the selling of one's goods from place to place in very much the same manner as is done by ordinary hawkers and peddlers, and also to protect the public from imposition and fraud, it ought to be so construed as to effectuate those objects as far as may be.

We do not lose sight of the rule that penal statutes are to receive a strict interpretation, and that the general words thereof should be restrained for the benefit of him against whom the penalty is inflicted (Potter's Dwarris on Stat. 245); but when the intention of the legislature is obvious and the language plain, no room is left for judicial refinement or construction. To the same effect are *State* v. *Goodenow*, 65 Me. 30, and the cases cited therein; *Weston* v. *Common-wealth*, 111 Pa. St. 251, and the current of authorities gen-erally upon this point.

The statute as first framed—see Pub. Laws R. I. cap. 895, passed May 29, 1890—contained no definition of the term "itinerant vender;" but by an amendment passed April 26, 1892, see Pub. Laws R. I. cap. 1057, the section which is now section 14 of the act was passed, and doubtless for the purpose of making it clear as to the class of persons to whom the act was intended to apply. And as it is evident from a comparison of said section with section 1 of chapter 448 of the Massachusetts statute upon the same subject, passed June 28, 1890, that it was copied therefrom, the language being identical with the exception of one unimportant word, the con-struction put thereon by the Supreme Court of that State in

the case cited is entitled to much weight. *Com.* v. *Hartnett,* 3 Gray, 450 ; *Pratt* v. *Telephone Co.,* 141 Mass. 225 ; *Freese* v. *Tripp,* 70 Ill. 496.

During the trial of the case the defendant offered to prove that before locating in Woonsocket he went to the State treasurer and offered, if it was necessary for him to do so, to deposit the amount required by section 6 of the statute, and that he was advised by him that, being a resident of the State and having a permanent place of business therein, he did not come within the provisions of the statute. This offer of testimony was objected to by the attorney-general as being immaterial, and ruled inadmissible by the court, to which ruling the defendant excepted. The ruling was correct. Ignorance of the law will not excuse its violation, even when one endeavors to ascertain the law and is misled by the advice of counsel. Bishop's New Crim. Law, § 294. In *Hoover* v. *State,* 59 Ala. 60, this doctrine is clearly enunciated. That was a case where a negro and a white person intermarried in violation of a statute of the State, and the court held that the court below did not err in refusing to receive testimony that before the alleged marriage the probate judge counselled the defendant that it was lawful for him to marry a white woman. "The maxim *ignorantia legis neminem excusat,*" said the court, "is a stern but inflexible and necessary rule of law that has no exceptions in judicial administration, and the former erroneous ruling of this court furnishes no excuse which we can recognize."

"It is very true that to constitute a crime there must be an act and an intent. But, in such a case as this, it is enough if the act be knowingly and intentionally committed. The law makes the act the offence, and does not go farther and require proof that the offenders intended, by the prohibited act, to violate the law. The act being intentionally done, the criminality necessarily follows." *State* v. *Smith,* 10 R. I. 258; *State* v. *Hughes,* 16 R. I. 403; *Com.* v. *Emmons,* 98 Mass. 6.

In *People* v. *Weed,* 29 Hun. 628, the defendant was con-

victed of bigamy.   It was proven at the trial that before the second marriage the defendant and his wife signed articles under seal, in Connecticut, that if either party should apply for a divorce the other would not oppose the application and would not appear against the petitioning party.   The defendant offered to prove that the justice of the peace in Connecticut who witnessed the paper told him that it was, in legal effect, a divorce, but the trial court excluded the evidence. This ruling was sustained, the court saying that "the prisoner, when he married the second time, knew that his first wife was still living."   "Neither the deputy sheriff who drew the paper nor the justice who read it over could destroy the effect of an intentional violation of a statute by advice that such violation could be lawfully done."

But it is urged by the counsel for defendant that as the offence here charged is not one which is *malum in se*, but merely *malum prohibitum*, the intent of the accused to do the prohibited act is an essential element of the crime.   In support of this contention they cite § 303, par. 3, of Bishop's New Crim. Law, as follows :

"*Consequences of Mistake.*—The wrongful intent being the essence of every crime, it necessarily follows that whenever one without fault or carelessness is misled concerning facts, and thereon acts as he would be justified in doing were they what he believes them to be, he is legally innocent the same as he is innocent morally."

We are not disposed to question the soundness of the general principle thus announced, but it is not applicable. The defendant does not pretend that he was in any way misled concerning the *facts* involved by the advice which he received, but only as to the law based upon facts which were fully known to him.   He knew of the law in question ; he knew what he wished to do ; he intended to do the thing which he did, and he simply took advice regarding his legal rights and liabilities in view thereof.   The only mistake, therefore, was one of law and not of fact ; and under all of

the authorities, many of which are cited by the defendant, a mistake of law is no excuse for its violation.

(2)   Having thus disposed of the grounds relied on in the petition for a new trial, we now come to the question raised regarding the constitutionality of the statute.

It is contended, in the first place, that the statute is prohibitive in its nature and invalid as being discriminative, in restraint of trade, and against public policy; and hence that it cannot be sustained as a police regulation. The main argument urged in support of this composite contention bears upon that part of the statute which prescribes the amount that must be deposited with the general treasurer as a condition of obtaining a license and the amounts at which the State and local license fees are fixed, it being contended that they are so unreasonable and excessive as to practically amount to prohibition. Section 3 of the act provides that every itinerant vender, before commencing business, shall take out a State and local license; and section 4, as amended, provides that he shall deposit with the general treasurer the sum of $1,000 as a special deposit and shall also pay a further sum of $200 as a State license fee, which payments shall authorize him to do business as an itinerant vender for the term of three months. In addition to the fee paid for a State license, section 6, as amended, requires the payment of $100 as a local license fee in a town or city having a population of less than 15,000, and $350 in a town or city having a population of more than 15,000. Upon the expiration of the State license the same is to be cancelled by the State treasurer, but he is to hold the special deposit for the period of sixty days thereafter, for the purpose of satisfying any claims of creditors that may arise in connection with the business done by the licensee and also for the payment of such fines and penalties as are incurred by him through any violation of the statute.

That the General Assembly, as representing the sovereign power of the State, has the right to impose reasonable conditions upon the right to carry on business or to follow any given trade, profession, or calling is beyond question. And

one of the most common of the conditions which is imposed under this power is that of the payment of a license fee or license tax for the privilege of carrying on the particular business or engaging in the particular trade or calling. If the imposition of such a condition has for its primary object the regulation of the business, trade, or calling to which it applies, its exercise is properly referable to the police power; but if the main object is the obtaining of revenue, it is properly referable to the taxing power. When, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. "Custom," says Mr. Cooley, in his valuable work on taxation, p. 587, "has much to do in determining whether certain classes of exactions are to be regarded as taxes or as duties imposed for regulation. If, by the common understanding and general custom of the country, a particular duty is regarded as being imposed upon certain individuals, not as their proportionate share in the burdens of government, but because of some special relation to property peculiarly located or to business peculiarly troublesome or dangerous, so that a requirement that the duty shall be performed by such individuals is usually regarded as only in the nature of regulation of relative obligations and duties through the neighborhood of the municipality, there is no sufficient reason why this may not be considered a mere police regulation, though the proceedings assume the form of taxation, and are even designated by that name."

We think it is reasonably clear from the custom and common understanding regarding such acts as the one now under consideration, as well as from the statute itself, that its main purpose was the regulation of the business of persons who temporarily locate in a given place, and not the obtaining of a revenue therefrom, and hence that it falls within the police power of the State. It is of the same general nature as statutes requiring licenses for hawkers and peddlers, which have been in force in this State for nearly a century, and which unquestionably are police regulations. The

statute is therefore not against public policy, as argued by defendant's counsel, but evidently in harmony therewith; for it is to the statutes of the State mainly that the court must look to ascertain what its public policy is. In other words, the acts of the legislature practically determine the policy of the State. And whether a given act is expedient or inexpedient, politic or impolitic, is for the determination of the legislature and not the court. License Tax Cases, 5 Wall. 462; *Leep* v. *Railway Co.*, 58 Ark. 414; *Baxter* v. *Tripp*, 12 R. I. 310.

But it is strenuously contended on the part of the defendant that the restrictions and license fees provided for by the statute are so far beyond what is reasonably necessary for the regulation and control of the kind of business contemplated by the act as to practically amount to the prohibition of business which in itself is perfectly legitimate and harmless; and hence that the act is clearly invalid, as being in restraint of trade.

We appreciate the force of this argument, and it is not without considerable hesitation that we have come to the conclusion not to adopt it. The restrictions which are placed upon almost all kinds of mercantile business, except such as is permanently carried on in a given locality, are certainly very stringent and, so far as we are aware, more burdensome than are imposed by similar statutes in other States. See Sts. of Me. 1885–1895, p. 261, § 4; Acts and Resolves of Mass. 1890, Ch. 448, § 6; Gen'l Sts. of N. J. vol. 2 p. 1827, § 8; Laws of N. H. 1897, cap. 46, § 2; Laws of Ohio, 1894, p. 174, § 2; Sts. of Vermont, § 4753; Laws of Md. 1892, cap. 596; Laws of Montana, 1891, p. 165; Laws of Nevada, 1899, p. 105.

But in view of the very broad discretion which is vested in the General Assembly to pass laws pertaining to the general welfare of the State (*Harrington* v. *Aldermen*, 20 R. I. 238), we cannot say that the restrictions imposed upon trade by the act in question are so clearly an invasion of the liberty or property of the citizen as to render it obnoxious to the con-

stitution. In other words, we have a reasonable doubt as to the constitutionality of the act, and therefore must resolve that doubt in favor of its validity. *Leep* v. *Railway Co.*, 58 Ark. 414; *State* v. *Dist. of Narragansett*, 16 R. I. 424; *Carr* v. *Brown*, 20 R. I. 215.

Several of the leading cases cited by the defendant's counsel, in which it has been held that the license fees were so unreasonable and excessive as to invalidate the ordinances under which they were imposed, are cases where municipalities have imposed such fees by virtue of legislative authority to regulate certain kinds of business, and the courts have held in effect that the authority granted was not for the purpose of taxation but for police regulation merely, and that such grants of authority would not be construed to give the right to tax as well as regulate the business or calling. In other words, the decisions have been to the effect that the powers granted should be strictly construed, and that no tax should be levied thereunder unless the authority therefor was given either expressly or by necessary implication.

To this general effect are *Caldwell* v. *City of Lincoln*, 19 Neb. 569; *Sipe* v. *Murphy*, 49 Ohio St. 536; *Austin* v. *Murray*, 16 Pick. 121; *Town* v. *Barenstein*, 66 Ia. 249; *Chaddock* v. *Day*, 75 Mich. 527. See also *City* v *Fowler*, 32 Minn. 364. The text cited from Cooley on Taxation, p. 597, is as follows: "The terms in which a municipality is empowered to grant licenses will be expected to indicate with sufficient precision whether the grant is conferred for the purposes of revenue, or whether, on the other hand, it is given for regulation merely. It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that regulation is the object, unless there is something in the language of the grant or in the circumstances under which it is made indicating with sufficient certainty that the raising of revenue by means thereof was

contemplated. If a revenue authority is what seems to be conferred, the extent of the tax, when not limited by the grant itself, must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual mode in which its legislative authority is exercised; but the grant of authority to impose fees for the purposes of revenue would not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose.

"Where the grant is not made for revenue, but for regulation merely, a much narrower construction is to be applied. A fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. If the State intends to give broader authority, it is a reasonable inference that it will do so in unequivocal terms." See also cases cited in note 2 on p. 598.

In the case at bar no question arises as to the exercise of delegated powers, but simply as to the constitutionality of an act of the legislature itself. And although, as already stated, the main purpose of the act was that of regulation, we cannot say that in view of the transitory and precarious nature of the business specified it was not competent for the legislature, in fixing the license fees, to have been governed to some extent by the revenue that would accrue to the State therefrom.

We find support for this view in *Carrollton* v *Bazzette*, 159 Ill. 284, cited by defendant. In that case the court, while holding that the ordinance in question was void as being plainly unreasonable and prohibitive in its character, because it required a license of $10 a day from an itinerant merchant, without regard to the extent of the business or length of time during which it was carried on, said that: "Under the liberal rule adopted by this court, such license fees, while imposed under the general police power, may, as we have seen, be imposed not only as a mere means of regulation, but also for revenue. Under such a rule it becomes a question not always

easy of solution to determine whether or not the imposition
of a certain amount to be paid as a license fee is an oppressive
exercise of a statutory power, having the effect, whether so
designed or not, to suppress and prohibit the business upon
which it is imposed, rather than merely to license and regu-
late it, and require it to bear its due share of the public bur-
dens.    And it must be admitted that the question, so far as
it comes within the discretion of the municipal authorities, is
one for them and not for the courts to determine.    It is only
when the ordinance is plainly unreasonable and prohibitive
in its character, where there is no power to prohibit, that the
courts may interfere and pronounce it invalid." See also
Cooley's Const. Lim. 200, and note 2; Cooley on Taxation,
571–2.

On the whole, therefore, while it is evident that the burdens
imposed by the statute upon the business aimed at are heavy
and will result in confining it within narrow limits, we do
not feel warranted in saying that the statute is so clearly
prohibitive of a traffic which is in itself lawful as to be un-
constitutional.

(3)    The point taken by defendant that the statute in question
is invalid on the ground that it is class legislation is unten-
able.    Laws which are public in their objects may, in the
absence of express constitutional prohibition, extend to all
citizens or be confined to particular classes.    And, if other-
wise unobjectionable, all that can be required is that they be
general in their application to the class to which they apply.
Cooley's Const. Lim. 479–80; *Ward* v. *Maryland*, 12 Wall.
418; *State* v. *Goodwill*, 33 W. Va. 179; *Ritchie* v. *People*,
155 Ill. 98; *State* v. *Read*, 12 R. I. 137.    If, as argued by
defendant's counsel, the statute discriminated between resi-
dent and non-resident itinerant merchants, we should find
no difficulty in agreeing with the position taken.    But, as
already intimated, the act applies equally to both of said
classes.

(4)    The only remaining point to be considered is the claim that
the statute is unconstitutional because the penalties pre-

scribed therein are excessive. The penalty fixed is a fine of not less than $100 nor more than $250, and imprisonment for not less than ten nor more than thirty days. The usual punishment for the violation of statutes of this general character is a fine or imprisonment or both ; and there is certainly nothing in the punishment here prescribed which strikes one as unusual, oppressive, or cruel. The provision of our constitution here involved (article 1, section 8) is traceable historically to the establishment of an independent government in this country, and was intended as an admonition to the law-making power to warn it against such violent and cruel punishments as had been inflicted in England during the arbitrary reign of some of the Stuarts. See 2 Lloyd's Debates, 225–6. "In those times," as said by Judge Story, "a demand of excessive bail was often made against persons who were odious to the court and its favorites ; and on failing to procure it they were committed to prison. Enormous fines and amercements were also sometimes imposed and cruel and vindictive punishments inflicted."

There is clearly nothing in the character and extent of the punishment prescribed by this statute which would bring it within the category of those degrading and cruel punishments which had become obsolete in this country long before the adoption of our State constitution, and which it was intended, by the provision referred to, to forever thereafter prohibit. See *Ex-parte Snow*, 1 R. I. 360 ; *Done* v. *The People*, 5 Park. Crim. Rep. (N. Y.) 364.

Petition for new trial denied, and case remitted for further proceedings.

*Willard B. Tanner, Attorney-General*, for State.

*Wilson & Jenckes and William J. Brown*, for defendant.