DECISION
Before the Court is an appeal by appellants Best in the Bay, Inc. and D. Steven Shallcross, its President, from a final decision and order entered by the Director of the Rhode Island Department of Environmental Management (the "DEM") that found Best in the Bay, Inc. to be in the unlawful possession of undersized shellfish and suspended its dealer's license for thirty days. For the reasons set forth in this decision, this Court affirms the decision of DEM.
 Facts/Travel
Best in the Bay, Inc. is a shellfish brokerage company with its principal place of business located at 325 Water Street in Warren, Rhode Island. Its President is D. Steven Shallcross.
On May 27, 1998, Best in the Bay, Inc. received ten bushels of shellfish from a company in North Carolina at a trucking terminal in Seekonk, Massachusetts. Later that day, Best in the Bay, Inc. sold and delivered five of these bushels to Captain's Catch in North Providence, Rhode Island. On June 2, 1998, Captain's Catch informed Best in the Bay, Inc. that one of the bushels appeared to contain undersized shellfish. An employee of Best in the Bay, Inc. retrieved the bushel and returned it to Best in the Bay, Inc.'s Warren facility.
Later that day, Edward Cabral, Jr., a conservation officer for the Division of Enforcement of DEM, conducted an inspection of that facility. At the time of the inspection, Officer Cabral found Scott Shallcross, manager of the facility, at the culling machine preparing to run the bag of shellfish retrieved from Captain's Catch through the machine. During the inspection, Officer Cabral initially began with his hand held gauge to measure individual shellfish from the bag. Scott Shallcross offered to run the shellfish through the culling machine to determine whether there were undersized quahaugs in the bag. Through this process, it was determined that 155 of the 400 quahaugs from the bag were undersized. Officer Cabral seized the undersized shellfish, but he did not transport them due to their odor.
Officer Cabral then issued a citation to Best in the Bay, Inc. for possessing undersized shellfish in violation of R.I. Gen. Laws § 20-6-11
(1981). Based on the normal criteria of the severity of the violation and the past history of the violator, Officer Cabral recommended a license suspension. Thomas Greene, Deputy Chief of the DEM Division of Enforcement, reviewed the recommendation. Based on DEM's prior dealings with the violator and the seriousness of the offense, he imposed the minimum license suspension of thirty days. He treated this violation as Best in the Bay, Inc.'s first offense, although he noted that DEM had cited Best in the Bay, Inc. (or Shallcross) previously for possession of undersized shellfish on April 23, 1994; July 18, 1994; April 8, 1992 and June 26, 1969. Deputy Chief Greene considered the June 2, 1998 violation to be a first offense because he could not locate the consent agreement on an earlier case. In a letter dated December 22, 1998, DEM informed Steven Shallcross that the shellfish portion of Best in the Bay, Inc.'s Multi-Purpose Dealer's License would be suspended for thirty days.
On March 15, 2000, at the request of Best in the Bay, Inc., Mary F. McMahon, Hearing Officer of the Administrative Adjudication Division of the DEM (the "Hearing Officer"), conducted a hearing to review the decision of the DEM Division of Enforcement. The Hearing Officer applied a definition of the term "possession" found in some criminal statutes and determined that there was insufficient evidence to establish that Best in the Bay, Inc. knowingly and intentionally had custody or control of undersized shellfish. On June 7, 2000, she issued a decision and order dismissing the violation and vacating the thirty-day license suspension (the "Decision").[1] The Hearing Officer noted that although the parties did not dispute that 155 shellfish seized by Officer Cabral were undersized, the parties disagreed on whether Best in the Bay, Inc. "had been in `possession' of the undersized shellfish." (Decision at 5.) In addition, the Hearing Officer acknowledged the Division's concern that her interpretation of the term "possession" would "encourage shellfish dealers to shield themselves from enforcement by not examining the products upon initial acquisition." (Decision at 10.) Despite these issues and concerns, the Hearing Officer believed that she was bound by a definition of the term "possession" that required proof of knowing and intentional custody or control of undersized shellfish. (Decision at 11.)
DEM then requested that the Director of DEM, Jan Reitsma (the "Director"), further review the matter. On July 28, 2000, the Director issued a Modification and Remand of the Recommended Decision (the "Modification and Remand Decision"). The Director disagreed with the Hearing Officer's view that the term "possession," as defined in R.I. Gen. Laws § 20-1-3(a)(6) (1981), requires proof that a party knew it had custody or control of undersized shellfish and intentionally retained them to prove unlawful possession under R.I. Gen. Laws §§ 20-6-11 and20-6-24(b) (1981). The Director remanded the matter to the Hearing Officer for new conclusions of law consistent with the Director's interpretation of the statute.
Finally, on September 15, 2000, the Hearing Officer issued an Amended Decision and Order (the "Amended Decision") by which she applied the Director's interpretation of the term "possession" and found that Best in the Bay, Inc. had been in the unlawful possession of undersized shellfish under the statute. She recommended to the Director that the shellfish buyer's portion of Best in the Bay, Inc.'s Multi-Purpose Dealer's License, as previously recommended by DEM's Division of Enforcement, be suspended for thirty days. She based her decision on the following:
 "2. The Division has proved by a preponderance of the evidence that Respondent had "possession" of the undersized quahaugs as the term is defined in R.I.G.L. § 20-1-3 (a)(6) and in the regulations.
 3. The Division has proved by a preponderance of the evidence that Respondent violated R.I.G.L. § 20-6-11
as alleged in the letter of suspension dated December 22, 1998.
 4. The Division has proved by a preponderance of the evidence that Respondent violated R.I.G.L. § 20-6-24(b)."
(Amended Decision at 4.)
On that same day, the Director approved the Amended Decision and entered it as a final agency order of DEM. The order suspended the shellfish buyer's portion of Best in the Bay, Inc.'s Multi-Purpose Dealer's License for thirty days, beginning on October 1, 2000. On October 5, 2000, the appellants filed a motion in this Court seeking a stay of the proceedings until this Court could reach a decision on its appeal of the agency decision. On October 6, 2000, the parties agreed by stipulation to stay suspension of the shellfish buyer's portion of Best in the Bay, Inc.'s Multi-Purpose Dealer's License, without prejudice, pending a decision by this Court on the merits of appellants' appeal.
Appellants have filed the instant appeal to attempt to reverse the Director's Amended Decision and to reinstate the original Decision of the Hearing Officer. They argue that (1) the Director of DEM failed to give the Hearing Officer's findings of fact and conclusions of law the proper deference; (2) the term "possession," as used in R.I. Gen. Laws §20-1-3(a)(6) (1981), requires a showing of knowing and intentional custody or control of undersized shellfish; (3) DEM failed to prove that Best in the Bay, Inc. was in "possession" of the undersized quahaugs; and (4) that the thirty-day license suspension imposed by DEM was excessive.
 Standard of Review
This Court possesses appellate review jurisdiction of the Amended Decision of DEM pursuant to R.I. Gen. Laws § 42-35-15 (1956) which provides in pertinent part:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of an agency, a justice of the Superior Court may not substitute his or her judgment for that of the agency on issues of fact or as to the credibility of testifying witnesses. Mercantum Farm Corp. v. Dutra, 572 A.2d 286, 288 (R.I. 1990) (citing Leviton Mfg. Co. v. Lillibridge, 120 R.I. 283, 291, 387 A.2d 1034, 1038 (1978)); Center for Behavioral Health, Rhode Island, Inc. v. Barros,710 A.2d 680, 684 (R.I. 1998). This Court must uphold an agency decision where substantial evidence exists on the record to support it findings. Baker v. Department of Employment and Training Board of Review,637 A.2d 360, 366 (R.I. 1994) (citing DePetrillo v. Department of Employment Security, 623 A.2d 31, 34 (R.I. 1993); Whitelaw v. Board of Review, Department of Employment Security, 95 R.I. 154, 156, 185 A.2d 104, 105 (1962)).
"Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (citing Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the Court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). Thus the Superior Court is required to uphold the agency's findings of fact and conclusions of law if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
Decisions of law, however, are not binding on the Court and may be reviewed regarding their applicability to the facts. Chenot v. Bordeleau, 561 A.2d 891, 893 (R.I. 1989); Carmody v. Rhode Island Conflict of Interest Commission, 509 A.2d 452, 458 (R.I. 1986). The meaning of a statute, as is at issue in this appeal, is a pure question of law that is freely reviewable by this Court. Howard Union of Teachers v. State of Rhode Island, 478 A.2d 563, 565 (R.I. 1984).
 Review of DEM's Decision to Modify the Decision of the Hearing Officer and Remand It for New Conclusions of Law
On appeal, the appellants challenge not only the final Amended Decision by the Hearing Officer, as affirmed by the Director, but also challenge the initial decision of the Director that modified the Hearing Officer's original Decision and remanded it to her for new conclusions of law. Appellants argue, as to the Director's initial decision, that the Director failed to accord the Hearing Officer the proper deference when he issued his Modification and Remand Decision. Before addressing the propriety of the Amended Decision, therefore, this Court must examine the standard of review governing the Director's review of the Hearing Officer's findings of fact and conclusions of law and determine if the Director exceeded his statutory powers when he initially modified the Hearing Officer's Decision and remanded it to her for new conclusions of law.
The standard of review applicable to appeals from a decision of a Hearing Officer to the Director of DEM is outlined by statute as follows:
 "[t]he director may in his or her discretion adopt, modify, or reject such findings of fact and/or conclusions of law provided, however, that any such modification or rejection of the proposed findings of fact or conclusions of law shall be in writing and shall state the rationale therefore."
R.I. Gen. Laws § 42-17.7-6 (1956). The Rhode Island Supreme Court spoke directly about this provision in Environmental Scientific Corp. v. Durfee, 621 A.2d 200 (R.I. 1993), when it wrote:
 "[t]he administrative structure in § 42-17.7-6
both reaffirms the director's role as the ultimate administrative decision maker and detaches the hearing officer's factual findings from an agency's capricious reversal or modification. Section 42-17.7-6 also requires the DEM to ground its rejection of the hearing officer's findings upon an adequate rationale. To withstand our scrutiny the DEM's rationale should be supported by competent legal evidence."
Id. at 208. In that case, the Supreme Court closely examined the two-tiered administrative review process utilized by many agencies, including DEM, and acknowledged that the Hearing Officer and Director of DEM each play significant, though distinct roles, in the review process. The Supreme Court stated:
 "the Legislature has created a funnel-like system. . . . Sitting as if at the mouth of the funnel, a hearing officer hears testimonial and documentary evidence from all parties. . . . Just as the funnel narrows, the hearing officer analyzes the evidence, opinions, and concerns of which he or she has been made aware and issues a decision. At the discharge end of the funnel, the DEM director reviews the hearing officer's findings and issues a final decision. Because the director sits at the narrowest point of the funnel, he or she is not privileged personally to hear or witness the broad spectrum of information that entered the widest end of the funnel. Therefore, the further away from the mouth of the funnel that an administrative official is when he or she evaluates the adjudicative process, the more deference should be owed to the fact finder."
Id. at 207-08. In Environmental Scientific, the Court overturned the decision of the Director of DEM because it was based in large part on a differing view of testimony heard by the hearing officer. Id. at 209. The Supreme Court's review of the record revealed that "DEM ha[d] cavalierly shunted aside the hearing officer's conclusions without regard for his factfinding." Id. In the instant case, however, after review of the initial Decision of the Hearing Officer and the record, it is clear that the Director of DEM did not quarrel with any of the findings of fact made by the Hearing Officer. He disagreed only with her interpretation of the applicable statutory law. The Director modified the Decision based on what he viewed to be the Hearing Officer's erroneous interpretation of the term "possession" as used in the governing statute. The Director thus fulfilled the statutory requirements of R.I. Gen. Laws § 42-17.7-6
(1956) by issuing a written decision that set forth his rationale for rejecting the Hearing Officer's interpretation of the applicable law. In so doing, he did not tread upon the fact-finding function of the Hearing Officer or cavalierly set aside her conclusions as was the case in Environmental Scientific. The primary issue before this Court on appeal, therefore, is whether the Director erred as a matter of law in his interpretation of the applicable statute.
 Review of the Amended Decision for Error of Law
The Amended Decision issued by the Hearing Officer and approved by the Director of DEM found Best in the Bay, Inc. to be in the unlawful possession of undersized shellfish in violation of R.I. Gen. Laws §§20-6-11 and 20-6-24(b) (1981). The Director determined that, under those statutory provisions, possession could be proven simply by evidence that (1) a person had dominion and control over undersized shellfish and (2) had not made a decision, at the earliest practical opportunity, to return them to the vicinity from which they had come. The Director rejected the Hearing Officer's determination, in her initial Decision, that the statute required DEM to prove that the person knowingly and intentionally possessed undersized shellfish. In her initial Decision, the Hearing Officer relied on the statutory definition of the term "possession" as referring to custody or control of undersized shellfish that commences at the time at which a decision is made not to return the resource to the immediate vicinity from which it was taken. (Decision at 9.) The Hearing Officer interpreted the word "decision," as used in that statutory definition, as the intentional act of deciding to retain undersized shellfish notwithstanding knowledge that they are undersized. On appeal, the appellants argue that the Hearing Officer's original interpretation of the statute was correct and that this Court should find the Director's contrary interpretation of the statute to be in error.
The statute that makes unlawful the possession of undersized shellfish states as follows:
 "[n]o person shall take and/or possess any quahaugs less than one inch (1") shell thickness (hinge width), soft shell clams or mussels of a diameter less than one and one half inches (1 1/2") taking the maximum shell diameter, or any oysters measuring less than three inches (3") measured parallel to the long axis of the oyster, unless greater minimum sizes are established by the marine fisheries council."
R.I. Gen. Laws § 20-6-11 (1981). That statute also provides for the imposition of certain penalties for the illegal possession of undersized shellfish:
 "[a]ny person who takes and/or possesses shellfish of less than the minimum size, upon conviction, shall be fined not less than ten dollars ($10.00) nor more than fifty dollars ($50.00) for each and every fifteen (15) shellfish taken. Additionally, any person who takes and/or possesses shellfish of less than the minimum size commingled and/or otherwise stored or contained with shellfish of not less than the minimum size, where the percentage of the less than minimum size shellfish is not less than ten percent (10%) of the total piece count of the commingled and/or otherwise stored or contained package, shipment, or container shall be subject to seizure and/or forfeiture of the entire commingled and/or otherwise stored or contained package, shipment, or container, in accordance with the provisions of §§ 20-1-8(e) and (f) and 20-1-8.1."
Id. Another provision of the statute allows the Director to "suspend, revoke or deny the license of a shellfish buyer or fisher of shellfish" who is found to be in unlawful possession of undersized shellfish pursuant to R.I. Gen. Laws § 20-6-11 (1981), subject to a right of appeal to this Court under the Administrative Procedures Act. Id. §20-6-24(d), (e) (1981).
In determining the meaning of the term "possession," as it is used in the statute, this Court first must examine the plain language of the statute. It is a well established precept of statutory construction that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Union Village Development Associates v. Town of North Smithfield Zoning Board of Review, 738 A.2d 1084, 1086 (R.I. 1999) (quoting Providence Worcester Railroad Co. v. Pine,729 A.2d 202, 208 (R.I. 1999)). If a statute is unambiguous and its words can be plainly interpreted, then the "`work of judicial interpretation is at an end.'" Kelly v. Marcantonio, 678 A.2d 873, 877 (R.I. 1996) (quoting DeAngelis v. Rhode Island Ethics Commission, 656 A.2d 967, 969 (R.I. 1995)).
The definitional section of the statute at issue provides, in pertinent part, as follows:
 "(a)When used in [Title 20], the word [possession] shall have the following meaning, unless the context indicates another meaning: . . . (6) the exercise of dominion or control over the resource commencing at the time at which a decision is made not to return the resource to the immediate vicinity from which it was taken. The decision must be made at the first practical opportunity."
Id. § 20-1-3(a)(6) (1981). The term "possession," as expressly defined in the statute, does not require that a person have custody or control of undersized shellfish with the knowledge that they are undersized and the intent to retain custody of them notwithstanding their small size. Indeed, the words "knowingly" and "intentionally," as used in that context, are noticeably absent from the statute. Instead, possession may be shown by proof of mere dominion and control over undersized shellfish beginning at the first practical opportunity that a decision is made not to return the shellfish to the immediate vicinity from which they were taken. Id. That decision can include the intentional act of deciding to retain undersized shellfish notwithstanding knowledge that they are undersized. Contrary to the Decision of the Hearing Officer, however, there is nothing in the definitional language of the statute to suggest that a "decision" is restricted to such a knowing and intentional act. By mandating that the decision must be made "at the first practical opportunity," the legislature suggests that the "decision" also may include the act of deciding to retain shellfish that later prove to be undersized where the party had no actual knowledge or intent to retain undersized shellfish at the time it made the retention decision but made that decision without determining their size "at the first practical opportunity."
Implicitly, therefore, a person who takes custody or control of shellfish is under an immediate obligation, at the first practical opportunity, to determine whether the shellfish are undersized and to return any undersized shellfish to the place from which they came. A person who chooses to take custody or control of shellfish without making that determination acts at his or her peril. Such a person can later be deemed to be in the unlawful possession of undersized shellfish so as to trigger a license suspension under R.I. Gen. Laws § 20-6-24(d) (1981) simply by retaining custody or control of the undersized shellfish regardless of whether the person can be shown to have had actual knowledge of the undersized shellfish and an intent to retain them. Based on the plain language of the statute, therefore, there is no requirement that a person knowingly and intentionally have custody or control of undersized shellfish to be in unlawful possession of the shellfish under § 20-1-3(a)(6) (1981) and subject to an administrative penalty under § 20-6-24(d) (1981).[2]
Moreover, even if the term "possession," as used in the statute could be deemed to be ambiguous, it is a well-settled precept of statutory construction that deference should be accorded an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency. See Parkway Towers Assocs. v. Godfrey,688 A.2d 1289, 1294 (R.I. 1997) ("[the agency's] administrative interpretation is entitled to great deference, especially when, as here, it is consistent with the overall purpose of the legislation"); Pawtucket Power Assocs. Ltd. P'ship v. City of Pawtucket, 622 A.2d 452, 456 (R.I. 1993) ("deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency . . . even when the agency's interpretation is not the only permissible interpretation that could be applied"). Great weight is given to an administrative agency's construction of a regulatory statute where the provisions of the statute are unclear or subject to more than one reasonable interpretation. Defenders of Animals, Inc. v. Department of Envtl. Mgmt., 553 A.2d 541, 543 (R.I. 1989).
In the case at bar, the Director adopted an interpretation of the term "possession" in an administrative license suspension proceeding that "places an affirmative duty on the possessor to determine whether the resource in his/her possession is legal at the first practical opportunity." (Modification and Remand Decision at 4.) He noted that a contrary interpretation, such as that made by the Hearing Officer, could create "a strong incentive for dealers not to examine their products in order to avoid liability." Id. Moreover, as the Director observed, interpreting possession in a manner that creates "such a `willful ignorance' loophole would seriously undermine the public confidence in this important natural resource and would also conflict with the stated purpose of Title 20 to manage and preserve the precious natural resources of this State." Id.
As noted by the Director, the statute itself requires that the provisions of Title 20 "shall be interpreted and construed liberally in aid of its declared purpose." R.I. Gen. Laws § 20-1-21 (1981), repealed and reenacted as R.I. Gen. Laws § 20-1-22 (1998). The Director's interpretation of the term "possession," therefore, is consistent with the overall purpose of the legislation to protect the natural resources of the State. Indeed, it is the only effective way to enforce administratively the prohibition on possessing undersized shellfish. As the Director's interpretation of the statute is imminently reasonable, it should be accorded due deference. Accordingly, this Court concurs with the Director's interpretation of the term "possession," as reflected in the Amended Decision, and rejects the contrary interpretation of that term reflected in the initial Decision of the Hearing Officer.
 The Term "Possession" as Applied to the Facts of the Instant Case
The only remaining question, therefore, is whether there is sufficient record evidence to support DEM's determination that Best in the Bay, Inc. was in the unlawful possession of undersized shellfish on the date in question. In addressing this argument, the Director of DEM undertook a two-prong analysis regarding whether Best in the Bay, Inc. exercised dominion and control over the undersized quahaugs and whether it made the decision not to return the undersized quahaugs to the vicinity from which they were taken. The Director found that Best in the Bay, Inc. exercised dominion and control over the admittedly undersized quahuags when it accepted delivery of them from the shipping company, delivered them for sale to a paying customer, and then received them back. Physical possession of the undersized shellfish as well as the "right to dictate the destiny of a bundle of goods are two clear examples of `dominion and control.'" (Modification and Remand Decision at 2.) The Director further determined that Best in the Bay, Inc. voluntarily waived its first practical opportunity to determine whether the quahaugs were undersized when it decided to ship the quahaugs at issue directly to Captain's Catch without first measuring them to determine whether they were in compliance with the law. The DEM stated that "Best [in the Bay, Inc.] has an obligation to determine whether the shellfish and other resources that it sells are legal. Best [in the Bay, Inc.] can not [sic] shift that obligation to its customers." (Modification and Remand Decision at 3.)
These findings of fact and conclusions of law are supported by the record. Appellants do not contest that they had dominion and control over undersized shellfish. They argue that their first practical opportunity to make a decision regarding the shellfish did not arise until the bag of shellfish was returned to its Warren facility on June 2, 1998 and that Officer Cabral took possession of the quahaugs before any decision regarding return or retention could be made. Yet, the facts as found by DEM do not support Best in the Bay, Inc.'s contention that its "first practical opportunity" to make a decision regarding the shellfish was disrupted by Officer Cabral's inspection. Best in the Bay, Inc.'s "first practical opportunity" to make that decision arose when it purchased the ten bushels of shellfish from the North Carolina company. When Best in the Bay, Inc. resold five of these bushels to Captain's Catch without first checking whether any of the bushels contained undersized shellfish, it operated its own peril.
As such, the Amended Decision is supported by the substantial evidence of record. The facts, as found by the Hearing Officer in her initial Decision and accepted by the Director in the Amended Decision were not clearly erroneous.
 Review of DEM's Order of a Thirty-day License Suspension
In the alternative, the appellants argue that even if Best in the Bay, Inc. was in the unlawful possession of undersized shellfish, the thirty-day license suspension imposed by DEM was excessive. The appellants contend that the Director should have reduced or negated the penalty under his power to exercise "individualiz[ed] discretion," which
 "refers to the discretionary decision maker's authority to adjust applicable rules at the margin in order to improve a program's ability to do individual justice. That is, even where the general rule mandates a result, the implementing decision maker has some power to modify that result in a specific application if doing so will better carry out the general spirit of the program. . . . This sort of discretion adds flexibility to the administrative scheme."
Charles H. Koch, Jr., Administrative Law and Practice, § 10.6[2](f) at 48 (West Publishing Co. 1997).
As noted previously, the Director of DEM has the power to suspend the license of a shellfish buyer or fisher of shellfish that is found to be in the unlawful possession of undersized shellfish pursuant to R.I. Gen. Laws §§ 20-6-11 and 20-6-24 (1981). In addition, Rules 8.01 and 8.02 of the Department's Rules and Regulations Governing Taking, Possession, Holding, Bartering and Trading of Shellfish provide as follows:
 "8.01 In addition to other penalties provided by law or other rule or regulation, any licensed shellfisherman or licensed shellfish buyer who violates the provision of G.L. Section 20-6-24, or these rules or an order issued by the Director shall be subject to suspension, revocation or denial of his license in accordance with R.I.G.L. Sections 20-2-13
and 42-17.1-2(s).
 8.02 The penalties for the initial and subsequent violations are as follows:
 a) first violation, up to six (6) month suspension of license
 b) second violation, revocation of license."
Thus in cases involving first violations, it is within the agency's discretion to impose a license suspension that may extend up to a six-month period.
The record evidences that in imposing a thirty-day license suspension, which is substantially less than the six-month license suspension permitted under DEM regulations, the agency did use its discretion in arriving at a fair result. During the March 15, 2000 hearing, Officer Cabral testified that the criteria used by the field officers in determining the appropriateness of a license suspension include the severity of the violation and past history of the violator to determine whether there was a continuing violation. (Tr. at 23.) This testimony was supported by Deputy Chief Greene, who stated that he considers the quantity of the undersized shellfish in possession of the licensee, the prior contacts DEM has had with the licensee, and whether the business has had a prior suspension or revocation when deciding the appropriate penalty to impose. (Tr. at 45.) In addition, Deputy Chief Greene stated that he treats a thirty-day license suspension as the minimum penalty so that "[i]f I'm going to suspend for less than that, I just don't suspend." (Tr. at 49.)
The record demonstrates that DEM did not arbitrarily and capriciously impose the minimum thirty-day license suspension of Best in the Bay, Inc.'s Multi-Purpose Dealer's License. Rather, the agency considered a number of factors including the licensee's prior history with DEM and the seriousness of the violation. It should be noted that DEM considered the violation to be severe given that 39% of the bag inspected by Officer Cabral contained undersized shellfish. These factors ultimately informed the "individualized discretion" exercised by the Hearing Officer and the Director in reviewing the suspension order. This Court cannot say, therefore, that the Director failed to exercise "individualized discretion" or that his decision to impose DEM's recommended administrative penalty of a thirty-day license suspension constituted an abuse of discretion in light of the maximum penalty that could have been imposed, the past history of the licensee and the nature of the violation.
 Conclusion
After a review of the entire record, this Court finds that the Amended Decision issued by the Hearing Officer, as approved by the Director of DEM, is supported by the reliable, probative and substantial evidence of record, is not affected by error of law, and did not constitute an abuse of discretion. It likewise does not prejudice substantial rights of the appellants. Accordingly, the Amended Decision of DEM is affirmed.
The stay of the thirty-day license suspension issued previously by this Court is dissolved. Pursuant to the final agency order issued by the Director of DEM in the Amended Decision, as affirmed by this Court, appellant Best in the Bay, Inc.'s Multi-Purpose Dealer's License shall be suspended for a period of thirty days from the date of entry of the final order and judgment of this Court.
Counsel shall confer and submit to the Court forthwith for entry an agreed upon form of order and judgment that is reflective of this decision.
[1] The Hearing Officer made the following conclusions of law:
 "1. The Division has proved by a preponderance of the evidence that the One Hundred Fifty-Five (155) quahaugs seized from Respondent were smaller than the minimum size of shellfish allowed pursuant to R.I.G.L. § 20-6-11.
 2. The Division has failed to prove by a preponderance of the evidence that the Respondent had "possession" of the undersized quahaugs as the term is defined in R.I.G.L. § 20-1-3 (a) (6) and in the regulations.
 3. The Division has failed to prove by a preponderance of the evidence that Respondent violated R.I.G.L. § 20-6-11 as alleged in the letter of suspension dated December 22, 1998."
(Decision at 12.)
[2] It is true that the definition of the term "possession" as set forth in the definitional section of the statute may not apply if the context of a statutory provision that uses the term possession suggests that another meaning is appropriate. See R.I. Gen. Laws § 20-1-3(a)(6) (1981) (the term "possession" shall have the following meaning "unless the context indicates another meaning"). Appellants do not argue, however, that there is anything in the context of the statutory provision making possession of undersized shellfish unlawful that would change the statutory definition of the term "possession." Indeed, there is nothing in the language of § 20-6-11 — the statutory provision making possession of undersized shellfish unlawful — that indicates that the term "possession," as used in that provision, should have any meaning other than that given the term by the legislature in the definitional section of the statute.
While § 20-6-11 criminalizes the possession of undersized shellfish by allowing for the imposition of certain fines "upon conviction," such a penalty does not necessarily depend on proof of custody or control of undersized shellfish with knowledge of their being undersized and the intent nonetheless to retain them. Being in the knowing and intentional custody and control of shellfish that are undersized as a matter of fact arguably can be criminal even absent proof that the person in custody and control of those shellfish has no actual knowledge that they are undersized and no demonstrable intent to retain custody or control of them notwithstanding their undersized nature. See State v. Foster,22 R.I. 163, 168, 46 A. 833, 835 (1900) (defendant could be convicted of selling goods without a license based on evidence that he knowingly and intentionally sold goods and that he did so without having a license; the State was not required to prove that he intended to sell the goods without a license); State v. Smith, 10 R.I. 258, 260-61 (1872) (defendant could be convicted of possession with the intent to sell adulterated milk although he had no knowledge of the adulteration because the intent of the legislature is that the seller of milk should take upon himself the risk of knowing that the article he offers for sale is not adulterated).
In this case, DEM does not seek to convict and punish Best in the Bay, Inc. criminally under § 20-6-11, but to impose an administrative penalty of a license suspension under § 20-6-24(d), (e), subject to review under the Administrative Procedures Act, § 42-35-1, et seq. There is no reason to impose a stricter standard of possession in that context than that set forth in the definitional section of the statute. To do so would undermine the very enforcement powers necessary for DEM to fulfill its statutory duty of protecting our natural resources.