WILLIAM E. POWERS, ATTY. GEN., *ex rel.* JAMES T. McGOWAN *et al. vs.* CHARLES E. JOCELYN *et al.*

FEBRUARY 10, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

488

FLYNN, C. J. This is a petition in equity in the nature of quo warranto to determine the title to certain offices of the sewer commission of the town of East Providence. No procedural or jurisdictional question is raised by the pleadings, all parties having expressed their interest in having an adjudication of their respective claims to these offices.

The relators are James T. McGowan, Milton H. Irons, Anthony Ferreira, Elliot Broadbent and Frank C. Carroll. As of the filing of the petition the relators claim their offices by virtue of their appointments by the town council pursuant to public laws 1950, chapter 2507, hereinafter sometimes referred to as the 1950 statute. The respondents are Charles E. Jocelyn, Joseph J. Vastano and Eugene J. Amaral. They claim these offices by appointments thereto by virtue of an ordinance passed by the town council pursuant to authority granted by an enabling act of the general assembly, P. L. 1951, chap. 2767, hereinafter referred to sometimes as the 1951 statute.

A short history of these enactments will help to understand the precise issue. Originally the general assembly enacted P. L. 1886, chap. 593, which was an ordinary enabling act. It authorized the town council of East Providence "to lay and make main drains and common sewers in any of the streets of said town"; provided for methods of assessment of the costs and expenses thereof; and authorized the town council to "provide by ordinance for the appointment of a board of three commissioners, who shall hold their office during the pleasure of the council * * *." It authorized the town council to confer upon such commissioners certain powers "except the authority to determine in what streets said main drains and common sewers shall be constructed," and also to fix the compensation of said commissioners and to prescribe their duties.

Between 1889 and 1950 this act was amended six times but none of such amendments is material or important here. However, by P. L. 1950 the general assembly enacted chap.

2507, which by its terms established a sewer commission of five members for the town of East Providence independently of any action by the town council, fixed their terms of office at six years, limited their pay, and conferred upon them by reference to the 1886 statute all the powers of the existing commission. Under this act the town council's discretion was limited to the mere appointment of the individual members and accordingly the relators were appointed.

About a year later the general assembly enacted P. L. 1951, chap. 2767, entitled "An Act In Amendment Of Sections 4 and 5 Of Chapter 593 Of The Public Laws, 1886, Entitled 'An Act Relating To Main Drains And Common Sewers In The Town Of East Providence,' As Amended." Like the 1886 act, which was thus amended, it was an enabling act authorizing the town council, among other things, to provide by ordinance in their discretion for the appointment of a board of three commissioners who shall hold their offices during the pleasure of the council, who shall make assessments, fix rates and exercise such portion of the authority conferred upon the town council as may be specified in the ordinance, including the authority to determine in what streets said mains and common sewers shall be constructed, and also to fix the compensation of said commissioners and prescribe their duties. The other provisions are not material here and nowhere is there any reference to the existing commission or the statute of 1950 which established it.

The relators argue in substance that the 1951 statute is invalid or ineffective in that it purports to amend sections of the 1886 act which did not exist, since that statute was repealed *in toto* by the enactment of P. L. 1950, chap. 2507. They also claim that said 1950 statute, under which they were appointed, was not repealed expressly or by implication by the passage of P. L. 1951, chap. 2767, because there is no express repeal and no substantial repugnancy between the pertinent provisions of the 1950 and 1951 statutes, and

further because in any event the 1950 statute cannot be validly repealed or superseded by an ordinance of a town council.

On the other hand the respondents argue that neither the 1886 enabling act nor sections 4 and 5 thereof was repealed *in toto* by the 1950 statute; that therefore the 1886 act was properly amendable by the 1951 statute since in any event the latter contained a complete re-enactment of the pertinent powers provided for in sections 4 and 5 of the 1886 act; that since the 1951 statute is the last expression of the general assembly on the subject it should be given effect as repealing by implication all the provisions of the 1950 statute which were irreconcilably inconsistent therewith; and that this repeal *by implication* includes the former provisions of the 1950 statute which established a sewer commission for the town of East Providence.

We do not agree with the relators' first contention that the 1886 act was repealed *in toto* by the passage of the 1950 statute. The latter did not repeal, expressly or by implication, the basic authority granted to the town council "to lay and make main drains and common sewers" and to make and collect assessments therefor. Indeed if the relators' argument were adopted, there would be no fundamental authority in the town council or in the commission, however appointed, to act validly in that respect under either the 1950 or 1951 statute.

Moreover all the powers of the commission originally stated in sections 4 and 5 of the 1886 act as previously amended were re-enacted specifically by reference thereto in the 1950 statute, and to that extent such powers cannot be held to have been repealed by implication because of inconsistency. Therefore even if we accept the argument of the relators that it is not valid to amend a former act which is nonexisting because of an intervening repeal thereof *in toto,* that rule cannot apply here.

However, assuming that the 1951 statute was not invalid

or ineffective on that ground, there still remains the question whether the general assembly intended to abolish the existing commission and to repeal the operative statute of 1950 by merely passing an enabling act authorizing the town council in its own discretion to enact an ordinance in relation to the same subject.

We agree with the relators' contention that ordinarily a statute cannot be amended or repealed by an ordinance of a town council. See *Baxter, Petitioner,* 12 R. I. 13; *State* v. *Thurston,* 28 R. I. 265; *Nixon* v. *Malloy,* 52 R. I. 430. See also *State* v. *Berberian,* 80 R. I. 444, 448. However, while generally helpful none of these cases involves all of the precise facts or governs the controlling issue presented here. In the instant case the question is whether a discretionary ordinance passed by virtue of the enabling act of 1951 can operate to repeal by implication the provisions of the 1950 statute and to abolish the commission which was expressly and directly established by that special statute of the general assembly.

In our judgment, if such a repeal may be legally possible it could arise only where the appropriate intent would be disclosed unequivocally from the provisions of the *amendatory act* itself rather than from the terms of a possible discretionary ordinance thereunder. To achieve such a repeal by implication, as here suggested, without any direct or indirect reference to the provisions, or even to the title, of the act sought to be repealed, the terms of the amendatory act would have to disclose unequivocally an intent of the general assembly to thereby *require* the passage of the ordinance and to constitute it as the delegated act of the general assembly itself. In other words, ordinarily the amendatory act should not only be of a character comparable to the statute to be amended, but also it should operate directly by its own terms to abolish the existing commission and to establish a new one which would be necessarily in-

consistent with the commission created by the previous statute which it seeks to repeal or amend.

That is not the situation here. Public laws 1951, chap. 2767, is a mere enabling act. Unlike the 1950 statute its terms are not self-operative in respect to any commission. Its provisions and passage did not abolish the existing commission or create a new one which was then necessarily inconsistent with the existing commission created by the provisions contained in the 1950 statute. The 1951 statute did not direct or require the town council to pass any such ordinance but on the contrary left it entirely to the discretion of such council whether they should pass the ordinance and establish a new and different commission.

Such an ordinance might not have been passed. In fact no ordinance was passed thereunder for several years, during which period the relators continued to function under the 1950 statute. The 1951 statute did not specifically authorize or refer to the right of the town council to abolish the commission existing under the 1950 statute. In fact no specific mention of that statute or the commission created thereunder is to be found in the 1951 statute. On the contrary it expressly attempted merely to amend a prior enabling act, which had been superseded in the pertinent material provisions by an intervening, complete and independent special statute of the general assembly in 1950 creating the sewer commission and fixing the terms of the offices.

If the practice advocated by respondents were to be approved as proper procedure for the repeal of regular statutes of the general assembly, it would be difficult to know whether a particular statute at any given time is in force or has been repealed without first exploring the records of ordinances passed by a town council, which are not always complete and accessible. We cannot believe this practice was intended by the general assembly.

In the instant case the respondents' claims are fundamentally based upon an ordinance passed by the town coun-

cil before the relators' terms expired. Admittedly such ordinance was necessary to support the claim that the enabling act of 1951 repeals by implication the inconsistent provisions of the 1950 statute establishing the commission. However, the inconsistency was created solely by the town council acting in its own discretion rather than by the operative terms of the enabling act itself. In such circumstances we do not agree that the 1951 act was passed by the general assembly with a clear intent to repeal or supersede the positive language in the special 1950 statute, which by its terms had established the commission relied on by relators. This view is supported by logic and furthermore no pertinent case to the contrary has been cited or has come to our attention.

In addition, the settled practice of the general assembly does not support respondents' theory but confirms our conclusion. The distinction between the effect of an enabling act, which merely authorizes certain discretionary local action by the town council, and a statute which by its own terms independently establishes a local commission or commands the town council to enact a specific ordinance is recognized in principle in the case of *Prete* v. *Cray,* 49 R. I. 209. In that case, which involved the laying of sewers, this court held in effect that a discretionary action by a local government, even though pursuant to general authority of a charter or an enabling act, did not have the effect of constituting such action as the delegated act of the general assembly of the state under its police powers.

Moreover that principle has been recognized and consistently followed by the general assembly in similar matters. For example, the city of Providence originally determined and controlled its own police affairs, including the appointment of police commissioners, by virtue of provisions in either the charter or an enabling act. The general assembly, however, superseded that privilege by themselves enacting independent statutes respectively creating a certain

board of public safety (P. L. 1917, chap. 1558), then a board of public safety appointed differently (P. L. 1931, chap. 1710), and later a state appointed director of public safety (P. L. 1935, chap. 2186).

Finally by an independent, complete and self-operating statute, P. L. 1935, chap. 2275, the general assembly established a bureau of police and fire and expressly directed that "the mayor of said city shall appoint, subject to the approval of the board of alderman of said city" certain members as therein established, and also *expressly abolished* the offices of director of public safety and others existing by virtue of the prior statute, to be effective as soon as the new appointees, as directed by the mandatory act, had qualified.

It is to be noted therefrom that when the general assembly intended to repeal a general or special statute which had directly established a local board, bureau, or director of public safety, and to abolish the offices of the director and members of such board or commission, they did so directly and expressly by a statute of comparable character and not by an enabling act which would merely authorize but not require further action by another legislative body. Nor did they seek to effectuate a repeal by ignoring the statute supposed to be amended or superseded and by amending an earlier enabling act, whereby the city had originally been authorized to provide for its own commission or bureau. Moreover they did not leave to the entire discretion of the mayor or city council the establishment of a new bureau or commission. On the contrary they abolished the old offices and established the new bureau by the express operative terms of the amendatory act and directed in mandatory language that the local government proceed forthwith to appoint the individual members as provided therein.

Similar examples and patterns of action will be found in other enactments of the general assembly. See P. L. 1935, chap. 2246, which specifically repealed provisions of a prior

statute and abolished the office of a state appointed police commission for the city of Woonsocket existing under P. L. 1926, chap. 923, as amended by P. L. 1929, chap. 1501. Another example is P. L. 1934, chap. 2098, specifically repealing P. L. 1931, chap. 1818, in connection with the abolition of a state appointed commission and the return of police powers to the mayor and local government of the city of Central Falls.

Considering the logic, the established practice followed by the general assembly to effect intended repeals, and the confusion that would result if respondents' contentions were to be upheld as to implied repeals of statutes by the passage of discretionary ordinances, we are of the opinion that the provisions of P. L. 1950, chap. 2507, were not intended to be repealed and were not impliedly repealed by the passage of P. L. 1951, chap. 2767, or the ordinance thereunder. It is our judgment that the offices of the relators were not thereby abolished; that being duly appointed under the provisions of the 1950 statute, which was in effect at the time, they are entitled to their offices as members of the sewer commission of the town of East Providence; and that the respondents are not entitled to exercise the prerogatives of said offices.

The prayers of the petition are granted, the claims of the petitioner relators to the offices of sewer commissioners of the town of East Providence are sustained, the corresponding claims of the respondents thereto are denied, and on March 5, 1956 the parties may present for entry in this court a form of decree in accordance with this opinion.

*Stephen R. Walsh, William E. Powers, Atty. Gen.,* for relators.

*Joseph R. Weisberger,* for respondents.