## KENT COUNTY WATER AUTHORITY

### v.

## STATE of Rhode Island (DEPARTMENT OF HEALTH).

### No. 97–585–MP.

Supreme Court of Rhode Island.

Jan. 29, 1999.

Joseph J. McGair, Warwick, for Plaintiff.

Mary E. McCabe, Rebecca Tedford Partington, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

To prevent situations where there is "Water, water, everywhere, Nor any drop to drink,"[1] the General Assembly enacted legislation "to aid in assuring the public is provided with safe and potable drinking water." G.L.1956 § 46–13–1. As a result, no one may operate a public water-supply system in this state without first obtaining annual approval of that system from the director of the Rhode Island Department of Health (DOH). See § 46–13–2.1(a), (c). To obtain such approval, operators of public water-supply systems must apply to DOH and demonstrate that they satisfy the applicable safety and other regulatory requirements for granting such approval. See id., at (b). DOH is obliged to review such applications and to conduct inspections of the systems in question to determine whether they comply with these requirements. See id.

In this case, Kent County Water Authority (petitioner) has asked us to review a Superior Court judgment upholding the validity of the annual approval fees charged by DOH to petitioner in connection with its operation of a public water-supply system. Objecting to DOH's imposition of these fees, petitioner claims that they amount to a form of taxation from which it is statutorily exempt. It also contends that DOH has been engaging in retroactive ratemaking by continuing to seek payment of these annual approval fees from petitioner after it failed to remit payment of the same in years past. Finally, petitioner argues that DOH's hearing officer should have recused himself from hearing this case because his status as a DOH employee rendered him incapable of serving as a neutral adjudicator. After issuing an administrative hearing notice, DOH conducted a two-part

1. Samuel Taylor Coleridge, "The Rime of the Ancient Mariner," Part II, 9th stanza, lines 39–40.

public hearing concerning the validity of these annual fees as applied to petitioner. The hearing officer found that these charges were lawful, prospective licensing fees that were not subject to petitioner's tax exemption. The Superior Court affirmed. For the reasons discussed below, we deny the petition for certiorari and affirm the Superior Court's judgment.

### Standard of Review

■■■■ In reviewing a petition for certiorari, we restrict our scrutiny of the record to the question(s) appearing in the petition. *See May v. Penn T.V. & Furniture Co.*, 686 A.2d 95, 97 (R.I.1996). Our task is to scour the record to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision maker committed any reversible errors of law in the matter under review. *See Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I.1997). If legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal. *See id.*

### Analysis

### I

### Tax Versus Licensing Fee

The Superior Court concluded that DOH's annual approval fee was a valid licensing measure designed to defray the costs involved in DOH's regulation of public drinking-water supply systems in this state, and that, therefore, petitioner was obliged to pay this fee to DOH. To determine whether legally competent evidence exists to support its judgment, our starting point is the statutory language authorizing DOH's director to impose this charge. *See* § 46–13–1 ("The purpose of this chapter is to aid in assuring the public is provided with safe and potable drinking· water."); § 46–13–2.1(a)–(b) (providing that all public water-supply-systems operators must apply for and receive DOH-director approval); § 46–13–2.1(c) (requiring the DOH director to establish by regulation an "initial [approval] fee" and an "approval renewal fee * * * related to the costs incurred in operating the [water-supply] program"). After giving these provisions their plain and ordinary meaning, *see Fleet National Bank v. Clark*, 714 A.2d 1172, 1177 (R.I.1998), it is manifest that the General Assembly has characterized this DOH charge as an annual approval fee and not as a tax. Although this designation is not dispositive, we accord it substantial deference even as we acknowledge the statutory pedestal on which petitioner rests its case—namely, its tax-exempt status as delineated in G.L.1956 § 39–16–13.[2]

The petitioner asserts that because the DOH "fee" is actually a tax or an assessment "in lieu of taxes," § 39–16–13 exempts it from having to pay such a fee. Again, we accord § 39–16–13 its plain and ordinary meaning and conclude that the General Assembly did indeed intend to exempt petitioner from taxation and from paying sums in lieu of taxes, save for those payments in lieu of taxes described in § 39–16–14.[3] Consequently, the pivotal question in this case is whether DOH's § 46–13–2.1(c) approval fee is a licensing measure that applies not only

---

**2.** In pertinent part, G.L.1956 § 39–16–13 provides:

"[T]he state covenants with the holders of the bonds that the authority shall be required to pay no taxes or assessments or sums in lieu of taxes, except as provided in § 39–16–14, to the state or any political subdivision thereof upon any of the property acquired by it or under its jurisdiction, control, possession, or supervision or upon its activities in the operation and maintenance of the property or upon any earnings, revenues, moneys, or other income derived by the authority, and that the bonds of the authority and the income therefrom shall at all times be exempt from taxation."

**3.** Section 39–16–14 provides:

"The authority shall pay annually, having first made provision for the payment of principal and interest on any bonds outstanding and any other charges payable from revenues due in such year as may be provided in the resolution or resolutions authorizing any bonds, in lieu of any property tax, as a charge upon its earnings or revenues, to each city, town or district, a sum equal in amount to any property tax levied on any property by or on behalf of the city, town, or district during the year next preceding the acquisition of such property by the authority. The authority shall have no power to levy or collect ad valorem property taxes."

to petitioner but to all other operators of public water-supply systems, or whether it is a de facto tax or a sum in lieu of taxation from which petitioner is exempt under § 39–16–13. The Superior Court concluded that it was the former and thus upheld DOH's imposition of this fee. Our role on certiorari is to ascertain whether legally competent evidence exists in the record to support this determination.

 Tax exemptions, which exist solely by virtue of legislative grace, *see Gott v. Norberg,* 417 A.2d 1352, 1358 (R.I.1980), arise only from constitutional or statutory provisions, *see Woonsocket Hospital v. Quinn,* 54 R.I. 424, 428, 173 A. 550, 552 (1934). Any taxpayer claiming entitlement to a statutory tax exemption carries the burden of proving that the assessment in question falls within the terms of the exemption. *See Dart Industries, Inc. v. Clark,* 696 A.2d 306, 310 (R.I.1997). To show that it qualified for the claimed tax exemption, petitioner needed to establish that DOH's annual approval fee was in fact a tax (or a sum in lieu of taxation) because a true licensing fee would not fall within the ambit of its § 39–16–13 tax exemption. After examining the record, we conclude that petitioner failed to carry its burden of proof in this regard.

We have previously noted the distinction between a tax—which is primarily a revenue-raising measure—and a licensing fee—which is primarily a regulatory imposition. *See State v. Foster,* 22 R.I. 163, 171, 46 A. 833, 835–36 (R.I.1900) ("If the imposition * * * has for its primary object the regulation of the business, trade, or calling to which it applies, its exercise is properly referable to the police power; but, if the main object is the obtaining of revenue, it is properly referable to the taxing power."); *see also Berberian v. Kane,* 425 A.2d 527 (R.I.1981) (holding that annual dues paid to the state bar association are license fees, not taxes); *Petition of Rhode Island Bar Association,* 118 R.I. 489, 374 A.2d 802 (1977) (same); *cf. Sinclair Paint Co. v. State Board of Equalization,* 15 Cal.4th 866, 64 Cal.Rptr.2d 447, 937 P.2d 1350, 1358 (Cal.1997) ("*[A]ll* regulatory fees are necessarily aimed at raising 'revenue' to defray the cost of the regulatory program in question, but that fact does not automatically render those fees 'taxes.' * * * [I]f regulation is the primary purpose of the fee measure, the mere fact that the measure also generates revenue does not make the imposition a tax.") (Emphasis in original.) Here, legally competent evidence indicates that DOH's annual approval fee is *primarily* a licensing charge to defray the costs incurred by DOH in connection with its regulation of water-supply systems in this state.

Section 46–13–2.1(c) explains that the purpose for which DOH collects the annual approval fee is to pay for "the costs incurred in operating the [public water-supply approval] program." These costs include expenditures incurred by DOH to (1) review and analyze applications for approval, including any supporting documents, that have been submitted by petitioner and by other public water-supply-systems operators for the purpose of securing DOH's annual approval to operate such systems, and (2) conduct inspections of the public water-supply systems subject to its jurisdiction to determine if they meet the requirements for approval. *See* § 46–13–2.1(b)–(c). Section 46–13–2.1(c) continues: "[t]he fees as established by the director shall be related to the costs incurred in operating the program and may include administrative, personnel, equipment, laboratory services and such other related costs necessary to carry out the provisions of this section of the law. All fees collected under this section shall be deposited as general revenues." *Id.*

In an effort to establish a fair and equitable annual fee to defray these approval costs, the Legislature created an advisory committee to assist the DOH director in this endeavor. According to the testimony of June Swallow (Swallow), the Chief of the Office of Drinking Water Quality (ODWQ) at DOH, this committee was comprised of state senators, representatives, and members of the water-system community and was modeled on a similar Environmental Protection Agency consulting group. After considering the revenue needs of both ODWQ and DOH, ODWQ's workload, the requirements under the Safe Drinking Water Act, chapter 13 of title 46, and various possible alternative fee scenarios, the committee recommended a

three-tiered "annual fee for licensure" schedule that would enable DOH to recoup the likely costs it would incur in fulfilling its regulatory obligations. DOH accepted this recommendation and adopted the following fee schedule:

"Transient non-community water system....$150.

"Nontransient [*sic*] non-community water system.$250.

"Community water system..$1.10 per connection:

minimum fee = $250.

maximum fee = $25,000."

Rhode Island Department of Health, Rules and Regulations Pertaining to Public Drinking Water, § 2.3(c)(2) (as amended Aug. 1996).

Furthermore, DOH determined that because petitioner served approximately 24,600 water-service connections,[4] it was large enough to qualify for the maximum-fee category, thereby obliging it to remit a $25,000 fee annually.

The petitioner failed to carry its burden of showing that the $25,000 licensing fee assessed to petitioner was unrelated to the costs of DOH's regulation. Rather, because the record shows that DOH's overall costs per annum to regulate the water systems subject to its jurisdiction approximated the annual revenues attributable to the approval fees it charged, these fees qualified as lawful licensing assessments. Specifically, Swallow testified that DOH needed these approval funds to pay "for personnel operating costs and contractual work that [DOH] had done to assist * * * with the regulating of water systems" which were required by law to obtain DOH's approval to operate. She further testified that the General Treasurer placed the approval-fee receipts in an account reserved for ODWQ use only. The evidence also established that, for the years in question, the funds in these accounts roughly equaled DOH's expenditures in implementing this water-system-approval program. Ac-

cording to the testimony of the Chief of Budget and Finance, Thomas Mullaney (Mullaney), DOH's expenditures in fiscal-year 1994, relative to regulating water systems under its jurisdiction, exceeded the amount of funds in this restricted account by $5000,[5] whereas in fiscal-year 1995, the amount in the restricted-receipt account ($365,000) exceeded DOH's regulatory expenditures by $5,500. In those two years, he stated, the General Treasurer withdrew no money from those two accounts, although, as Swallow testified, 7 percent of these funds (termed an "overhead charge" relating to the state's maintenance of the account) were paid into the general treasury. Finally, although the 1996 Appropriations Act abolished the restricted-receipt account, the General Assembly nonetheless appropriated state funds to DOH equal to the state's anticipated receipts from the water systems subject to its regulatory approval.

■ The mere fact that DOH deposited these funds into the general treasury does not ipso facto convert them into taxes. *See Opinion to the Governor*, 92 R.I. 489, 170 A.2d 284 (1961); *see also Sinclair Paint Co. v. State Board of Equalization*, 15 Cal.4th 866, 64 Cal.Rptr.2d 447, 937 P.2d 1350 (Cal. 1997). As long as the annual approval fee's primary purpose and effect was to pay for DOH's costs in carrying out its statutory duty to regulate the state's water-supply systems under its jurisdiction, and as long as the total revenues generated by these fees were roughly equivalent to DOH's costs in implementing such regulation, then such fees are, by definition, an annual licensing measure, albeit an ancillary consequence of imposing such fees is an increase in revenue raised by DOH and, thus, by the state. In sum, we conclude that legally competent evidence exists in the record to support the Superior Court's conclusion that the imposition of DOH's § 46–13–2.1 annual approval fees upon petitioner constituted a lawful licensing measure, and that petitioner may not

---

4. In the first two years that DOH charged approval fees, namely fiscal-years 1994 and 1995, petitioner served 24,600 connections. In fiscal-year 1996, it served 24,507 connections.

5. Mullaney reiterated Swallow's testimony that ODWQ used these restricted-receipt-account funds for DOH's personnel and operating costs.

rely upon its § 39–16–13 tax exemption to avoid its obligation to pay these fees.

## II

### Retroactive Ratemaking

■ Having concluded that the Superior Court properly found that the charges in question qualified as licensing fees, we next address whether DOH's imposition of these fees was tantamount to retroactive ratemaking. The petitioner argues that, absent its initiation of a new rate filing with the Public Utilities Commission (PUC) in fiscal-year 1996 or later,[6] it lacked sufficient funds to pay DOH's annual license fees for fiscal-years 1994 through 1996. Moreover, petitioner contends that PUC would not allow it to make an "abbreviated filing" for this purpose. Therefore, petitioner asserts, by requiring it to initiate a costly and time-consuming new PUC rate filing to acquire such past-due funds, DOH has been attempting to compel it to engage in retroactive ratemaking. Respectfully, we disagree with these contentions.

Legally competent evidence exists in the record to support the Superior Court's conclusion that DOH was not and is not now forcing petitioner to engage in retroactive ratemaking. DOH always billed petitioner for the annual approval fee in advance of each fiscal year for which petitioner was obliged to obtain DOH's approval to operate its public water-supply system. The mere fact that DOH has continued to demand payment from petitioner of these past-due, multi-year arrearages (now totaling $75,000) does not constitute a coercion of petitioner into retroactive ratemaking. In addition, unrebutted testimony demonstrated that, as a public water authority, petitioner had several options in deciding how to pay the $25,-000 annual approval fee. To do so, it could have used, for example, unrestricted funds contained in its general operating and maintenance accounts, in its operating and maintenance reserves, or in any of its other unrestricted accounts. Moreover, it could have opted to eliminate various other non-manda-

tory expenditures. Additionally, it could have initiated a new rate filing with PUC that included the license-fee charges, or alternatively, it could have prepared and filed an abbreviated PUC rate filing in an attempt to obtain the necessary funds to pay for these or its other costs. Therefore, because petitioner could have and still may avail itself of various options to obtain the funds necessary to pay these lawfully imposed approval fees, we reject its retroactive-ratemaking contention.

## III

### Alleged Bias of the Hearing Officer

■ Finally, contrary to petitioner's assertion, legally competent evidence likewise supports the Superior Court's determination that DOH's hearing officer was not required to recuse himself from hearing this matter solely because of his employment with DOH. To overcome the presumption in favor of an adjudicator's honesty and integrity, a party claiming bias or some other disqualifying factor must adduce evidence that: (1) the same person(s) involved in building one party's adversarial case is also adjudicating the determinative issues; and/or (2) other special circumstances render the risk of unfairness intolerably high. *See La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights,* 419 A.2d 274, 285 (R.I.1980).

■ Here, the petitioner failed to adduce any evidence to support its charge of bias. First, no evidence demonstrated that the hearing officer participated in assembling any adversarial case against the petitioner. Second, the petitioner's argument that the hearing officer's mere status as a DOH employee rendered the risk of unfairness intolerably high is insufficient to demonstrate any actual bias or appearance of impropriety. We refuse to infer a risk of adjudicative bias or impropriety based solely upon the hearing officer's government-employment status. Indeed, to do otherwise would mean that no government adjudicator in this state could sit

---

**6.** At the time of the administrative hearing below, petitioner had not initiated a general rate filing with PUC since March 1993.

in judgment on any case involving his or her employer. Such a contention proves too much because, if we were to accept it, then virtually all administrative adjudications involving governmental entities in this and other jurisdictions would grind to a halt.

### Conclusion

Because legally competent evidence exists to support the Superior Court's judgment and because no reversible error of law subverts its validity, we deny the petition for certiorari, quash the writ previously issued, affirm the Superior Court's judgment, and remand the papers in this case to that tribunal with our decision endorsed thereon.