DECISION
Grasso Service Center, Inc. et al. (collectively "Plaintiffs") move for a preliminary injunction and declaratory relief. Plaintiffs pray this Court to enjoin Defendants Alan Sepe, et al. (collectively "City" or "Defendants") from implementing a new vehicle towing and storage plan created by Defendants. Further, Plaintiffs request this Court to declare that the new vehicle towing and storage plan is an unlawful use of power, involves an illegal tax, and abridges various constitutional rights of Plaintiffs. Defendants move for denial of said Motion for Preliminary Injunction and Declaratory *Page 2 
relief. Jurisdiction is pursuant to Super. R. Civ. P. Rule 65 and G.L. 1956 §§ 9-30-1 et seq. The parties have agreed, pursuant to Superior Court Rule of Civil Procedure Rule 65(a)(2), to consolidate the hearing of the application for a preliminary injunction and the trial on the merits seeking permanent relief.
 FACTS AND TRAVEL
All towing companies joined as Plaintiffs in the instant matter, as well as the Rhode Island Public Towing Association, are Rhode Island corporations. Currently, in order to perform tow services for the City of Providence, a tow service company must be on an approved list of vehicle towing and storage companies. Inclusion on this list is in addition to maintaining good standing with the Public Utilities Commission ("PUC") and abiding by the PUC-regulated fee schedule. Defendants, by way of an initiative from Mayor David N. Cicilline ("Cicilline"), sought to change the way the City of Providence uses tow companies for its non-consensual tow needs. Plaintiffs herein seek to prevent Defendants from making said change.
The current tow list policies and procedures have been the subject of extreme public scrutiny throughout their existence. Allegedly, past mayoral administrations demanded campaign contributions from towing companies in order to maintain a position on the tow list. Some time in 2003, in an attempt to purge the tow list of corruption, Cicilline caused the Providence Police Department ("PPD") and the necessary City boards to promulgate a Request for Proposal ("2003 RFP"). According to Defendants, the 2003 RFP was a "comprehensive set of regulations and procedures designed to make the bidding procedure more transparent and the City's regulation of the process more effective." (Defs' Memo. 2.) Pursuant to this 2003 RFP, the City of Providence was to *Page 3 
be divided into four (4) separate zones, and through a bid process, the City would select two (2) tow companies to operate in each zone. The 2003 RFP would effectively end the relationship between the City of Providence and approximately half of the tow companies on the old tow list, at least until the time came to renew contracts made pursuant to the RFP. The 2003 RFP mandated that the eight (8) towing companies enter into contracts with the City of Providence, through which the tow companies would agree to remit certain monies to the City of Providence. The contracts would call for the tow companies to agree to remit, at a minimum, twenty percent (20%) of the tow fee and ten percent (10%) of the storage fee, to the City for each and every tow. According to Defendants, this revenue "was intended to compensate the City for the considerable expenses connected with implementing the RFP as well as the City's significant role in keeping the City's streets free of various obstacles." (Def's Memo. 2.)
In April 2003, a few months following the promulgation of the 2003 RFP, a group of tow companies and the Rhode Island Public Towing Association (also herein named as a Plaintiff) filed suit to enjoin the implementation of the 2003 RFP. The Defendants agreed in 2003 to halt the implementation of the 2003 RFP until Plaintiffs' suit was decided by this Court. The 2003 complaint contained four (4) main arguments: (1) the City of Providence was without the legislative power to create the relationships and contracts with towing companies contemplated by the RFP; (2) the 2003 RFP was preempted by the various delineated ratemaking powers of the PUC; (3) the revenue-generating fees contained in the contracts pursuant to the 2003 RFP constituted a confiscatory taking in violation of the United States Constitution; and (4) the revenue-generating *Page 4 
fees contained in the contracts pursuant to the 2003 RFP constituted an illegal tax.
On July 7, 2003, Plaintiffs' motion for a declaratory judgment and its request for a permanent injunction on its complaint were denied by a Justice of the Superior Court. Plaintiffs appealed this ruling, and on November 17, 2006, the Supreme Court stated:
 "During the course of oral argument, it was disclosed that an amended Request for Proposals (RFPs) had been issued by the defendants. Because this appeal was based on an RFP that is no longer in effect, we deem this appeal non-justiciable. We therefore dismiss the appeal on mootness grounds; but do so without prejudice to the plaintiff raising a new challenge to the modified RFP and contracts." Rhode Island Public Towing Association, Inc. et al. v. David N. Cicilline et al., No. 2005-373-A. (R.I., filed Nov. 17, 2006) (Order).
Following the dismissal of the 2003 lawsuit and prior to the Supreme Court's ruling on appeal, Defendants implemented the 2006 version of the RFP ("2006 RFP"), which is the subject of the instant matter. Parenthetically, this Court notes that while Defendants believe the 2006 RFP is virtually the same in all material respects to the 2003 RFP, Plaintiffs vehemently deny this. It does not appear that the Supreme Court made any judgment with regard to the differences between the 2003 and 2006 RFPs. Its ruling is confined to the statement that the 2003 RFP was "no longer in effect" at the time of judgment. As noted above, Defendants, as part of their argument in the instant matter, contend that the 2003 and 2006 RFPs are materially identical.
Pursuant to the 2006 RFP, tow companies were required to submit their bids by June 26, 2006. The bid period was extended by the City to July 24, 2006, and on that date all of the submitted bids were opened. Seventeen (17) bids in all were submitted to the City. On or about December 19, 2006, following an examination of the bids and after the Supreme Court decision on the 2003 RFP, a recommendation was made to the Board *Page 5 
of Contract and Supply. The recommendation listed the eight (8) towing companies, two (2) for each of the four (4) zones, that had been selected out of the seventeen (17) original bidders. On December 26, 2006, the Board of Contract and Supply accepted the recommendation. Currently, Defendants are preparing contracts which mirror the requirements of the 2006 RFP.
On January 22, 2007, Plaintiffs filed their Verified Complaint for Declaratory Judgment and Injunctive Relief. The Verified Complaint and accompanying memorandum delineate several bases upon which Plaintiffs request this Court declare the 2006 RFP to be invalid and enjoin Defendants implementation of it. Defendants challenge the bid process as a grant of illegal franchises; the "referral fee" as a usurping of the PUC's ratemaking authority; the "referral fee" as an illegal tax; the RFP as an unlawful confiscatory taking and denial of certain Constitutional rights; and the RFP process as "secret," "non-public," and "arbitrary and capricious." Further, at oral argument, both parties waived certain claims in the interest of moving the case to a speedy resolution. Defendants waived any rights to a claim or defense pursuant to G.L. 1956 § 45-15-5, which requires a Plaintiff to "present . . . a particular account of that person's claim" to the city council at least forty (40) days prior to filing suit, something Defendants allege that Plaintiffs did not do. In addition, Plaintiffs waived any argument alleging that the 2006 RFP "referral fee" represented a confiscatory taking or otherwise violated the Constitutional rights of Plaintiffs. The balance of the claims are now before the Court. *Page 6 
 ANALYSIS A. Law of the Case Doctrine
Defendants challenge most of the remaining claims within Plaintiffs' Verified Complaint under a theory of "law of the case." Specifically, Defendants contend that the claims challenging the 2006 RFP as granting illegal franchises, imposing an illegal tax, and usurping the power of the PUC have all been previously decided in their favor. Defendants note that these three claims are basically identical to three of the claims within the 2003 Lawsuit. Further, Defendants point out that the 2003 Lawsuit, including the three claims herein allegedly repeated, was dismissed at the Superior Court level, and ask this Court to summarily deny relief as to those three claims under the law of the case doctrine since another Superior Court judge has already decided the matter.
In Rhode Island, "[t]he law of the case doctrine provides that, after a judge has decided [a] . . . `matter . . . a second judge, confronted at a later stage of the suit with the same question in the identical matter, should refrain from disturbing the first ruling.'" Balletta v.McHale, 823 A.2d 292, 295 (R.I. 2003) (citations omitted). The law of the case doctrine does not have the "finality of the doctrine of res judicata"; however, it "`ought to be adhered to for the principal reason that it is designed to promote the stability of decisions of judges of the same court and to avoid unseemly contests and differences that otherwise might arise [among] them to the detriment of public confidence in the judicial function'" Gufca v. King, 865 A.2d 328, 332-33 (R.I. 2005) (quoting Payne v. Superior Court for Providence County,78 R.I. 177, 184-85, 80 A.2d 159, 163 (1951)). However, when considering whether to apply the law of the case doctrine, this Court is mindful that it "is a flexible rule that may be disregarded when the record [has] *Page 7 
expanded." Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 677 (R.I. 2004) (citing Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986)). In fact, our Supreme Court has said the "doctrine does not apply when the second motion is based on an expanded record." Weybosset Hill Invs., LLCv. Rossi, 857 A.2d 231, 237 (R.I. 2004) (quoting Goodman, 512 at 864).
Applying the law of the case doctrine to the within matter, Defendants request that this Court find that the judgment in the 2003 lawsuit serves as the law of this case. In the 2003 case[1] — actually argued on July 7, 2005 — the attorney for the Plaintiffs outlined the "four allegations" made in that suit, three of which are essentially repeated in this action. (Tr. 7-8.) "[A]llegations . . . that an illegal franchise is created by this contract; that it is a violation of the PUC regulations for the City to drive [sic] revenues from the towing fees; and . . . [that] the fee that's generated, to the extent that it would be in excess of any cost recoupment, is an indirect and illegal tax . . ." were all made in the 2003 lawsuit, and are all effectively repeated in front of this Court. (Id.) This Court in 2003 "reviewed the pleadings, [did its] own research, [and] heard the argument" before concluding "that the plaintiffs . . . failed to sustain the various burdens imposed upon them by law and which would entitle them to relief." (Tr. 26.) For that reason, this Court denied relief on the complaint for a declaratory judgment and injunctive relief. (Id.) Accordingly, the law of the case doctrine could prevent this Court from now re-hearing the same issues that have already been addressed.Balletta, 823 A.2d at 295 (citations omitted). This Court further finds that there has been little expansion of the record in this matter which would impact the decision of the Court in the 2003 lawsuit.Chavers, 844 A.2d at 677 (citations omitted). Thus, as all three of these arguments have been found *Page 8 
insufficient, this Court could deny Plaintiffs' request for declaratory and injunctive relief on the ground of the law of the case.
Nevertheless, this Court will not dismiss Plaintiffs' Verified Complaint for Declaratory Judgment and Injunctive Relief on these grounds. While it is true that the record in this matter has not expanded by any significant measure, the position of the parties in front of this Court is markedly different than it was in the 2003 case. As the parties are currently situated — with the bidding process over and the City currently drawing contracts — it would be unfair to characterize the within action as containing the "same questions" as the 2003 lawsuit. Balletta, 823 A.2d at 295 (citations omitted) (holding judges should refrain from disturbing an earlier ruling within the case on the same issue). Further, this Court is of the opinion that the Supreme Court's ruling on appeal in the 2003 lawsuit all but instructed the herein Plaintiffs to wait until the Defendants promulgated and implemented the 2006 RFP. The Supreme Court stated: "We therefore dismiss the appeal on mootness grounds; but do so without prejudice tothe plaintiff raising a new challenge to the modified RFP andcontracts." Rhode Island Public Towing Association, Inc. et al. v. DavidN. Cicilline et al., No. 2005-373-A. (R.I., filed Nov. 17, 2006) (Order) (emphasis added). In essence, the Plaintiffs have followed the direction of our Supreme Court. To now dismiss their suit on the basis of the law of the case doctrine would deny them their right to raise a new challenge granted by the Supreme Court's dismissal of the earlier appeal without prejudice. Accordingly, this Court will not dismiss Plaintiffs' suit pursuant to the law of the case doctrine. *Page 9 
 B. PUC Authority
Plaintiffs argue that the 2006 RFP, more specifically the provision creating a percentage referral fee, is legally preempted because it invades a field that the state, via the legislature, has intentionally occupied through the PUC. Because it purports to set rates or, at least alter the rates, mandated by the PUC pursuant to their statutory power in G.L. 1956 § 39-12-1 et seq., Plaintiffs contend that the 2006 RFP is an unlawful infringement on the PUC's power to regulate tow operators as granted in § 39-12.1-1 et seq., thereby invading a field over which it has exclusive authority.
Under § 39-12.1-15, the PUC has the exclusive authority to "supervise, regulate, and enforce the provisions of [chapter 12.1 of title 39, the Towing Storage Act]." It is undisputed that the PUC has plenary authority concerning the certifying of tow operators in Rhode Island and the monitoring of their performance. Section 39-12.1-2(3). Further, our legislature has granted to the PUC the power to regulate all "common carriers by motor vehicle," which includes tow companies and their operators. Section 39-12-4(a)(1). Pertinent to this matter, the PUC is charged with the task of establishing, regulating, and enforcing uniform rates set for the common carriers, referred to as tariffs. Section39-12-12. Once a "just . . . and reasonably compensatory rate" has been set,
 "[n]o common carrier of property by motor vehicle shall charge or demand or collect or receive a greater or less compensation for transportation or any service in connection therewith between points enumerated in the tariff than the rates and charges specified in the filed tariffs in effect at that time; and no carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any other person, any portion of the rates or charges so specified, or extend to any person any privileges or facilities for transportation in intrastate commerce, except such as are specified in its tariffs." Id.
Section 39-12-37 makes it a criminal offense to violate § 39-12-12. *Page 10 
Given the foregoing, this Court is reminded of the basic tenets of Rhode Island preemption law. It is clear in Rhode Island that when a "municipal ordinance [is] in direct and material conflict with a state law of general character or state wide concern [that it] is invalid, and that whether the two so conflict depends on what the Legislature intended when it enacted the statute." Town of Glocester v. R.I. SolidWaste Management Corp., 120 R.I. 606, 607, 390 A.2d 348, 349 (1978) (citing Berberian v. Housing Authority, 112 R.I. 771, 775, 315, A.2d 747, 749-50 (1974)). More recently, our Supreme Court has found that "[a] state statute preempts a local ordinance only when the legislature manifests a clear intent to do so or when the statute and the ordinance are in clear conflict." Providence City Council v. Cianci, 650 A.2d 499,501 (1994) (citing Powers ex rel. McGowan v. Jocelyn, 83 R.I. 487, 494,120 A.2d 143, 147 (1956)). Further, the local-statewide debate is perhaps best deciphered with the aid of three considerations: "First, when it appears that uniform regulation throughout the state is necessary or desirable, the matter is likely to be within the state's domain . . . [s]econd whether a particular matter is traditionally within the historical dominion of one entity is a substantial consideration . . . [t]hird, and most critical, if the action of a municipality has a significant effect upon people outside the home rule town or city, the matter is apt to be deemed one of statewide concern."Town of East Greenwich v. O'Neil, 617 A.2d104, 111 (R.I. 1992) (citations omitted).
While it is abundantly clear, as Plaintiff asserts, that the PUC regulates tow operators — mainly through the granting of certificates of public convenience and necessity — it is equally clear that the PUC has never sought to regulate or administer tow lists. The Towing Storage Act enunciates its purpose to be an assurance to owners of *Page 11 
non-consensually towed vehicles of a fair and reasonable process guaranteed by a set of strict procedures and uniform tow rates. Section39-12.1-1. It performs this task through the issuance of a certificate of public convenience and necessity, in accordance with § 39-12.1-2(3), and through the exercise of its rate setting power in § 39-12-12. As this Superior Court noted in Sterry Street Auto Sales v. Pare, No. 04-5086, 2005 WL 524806 (R.I.Super. Mar. 3, 2005), "[i]t is only after a towing company has obtained PUC certification that those wishing to be considered for police tows can apply to police departments. . . . Nothing in the [Towing Storage Act] prohibits the [law enforcement agency] from exercising its discretion to be more restrictive, and select from among certificated towers those who meet the specific standards of the [law enforcement agency] and the public it serves."Id. at *8. This Court agrees with this holding, and in light of the considerations outlined in the Town of East Greenwich case, finds that the discretion exercised here by the Defendants in choosing the eight (8) winning bidders does not infringe upon any right or power granted to the PUC by our legislature.
Plaintiffs further contend that the "referral fee" provisions of the 2006 RFP purports to set rates or, at least alter the rates, mandated by the PUC pursuant to their statutory power in G.L. 1956 § 39-12-1 et seq. The PUC is vested with the exclusive authority for setting the rates by which a common carrier, such as a tow company in a non-consensual tow, may charge a customer, whose vehicle has been towed. Section 39-12-12. A common carrier is prohibited from charging different rates, other than those set by the PUC, and is prohibited from refunding or remitting any amount of the tow fee to the vehicle owner. Id. *Page 12 
It is clear from the plain language in the statute that the Legislature's mandate concerning the rates charged and prohibition of rebates or remissions is in reference to the transaction between the tow company and the customer. Further, as mentioned above, § 39-12-1 et seq. and § 39-12.1-1 et seq. were created, in large part, in order to protect the public, and not the tow companies, from being charged various rates or given disparate treatment. See, eg., § 39-12.1-1. In addition, the provision providing for criminal sanctions for charging different tow or storage rates or other disparate treatment, § 39-12-37, does not list "municipality" as a possible violator. Section 39-12-37. Presumably, the statute does not include "municipality" as a possible offender because the legislature has vested the PUC only with the power to controlthe towing companies and their agents, as opposed to the municipalities that use those tow companies. The "referral fee" will have noimpact on the amount charged to the owner of the vehicle for either the tow or the storage, and as such, this Court finds that the 2006 RFP is not an attempt to usurp the PUC's statutory ratemaking authority.
 C. Illegal Franchise
Plaintiffs argue that the 2006 RFP and the contracts awarded pursuant to it represent the granting of an illegal franchise by the City of Providence, outside the purview of its franchising power. Essentially, Plaintiffs contend that the awarding of contracts pursuant to the 2006 RFP is illegal because "towing companies" are not specifically listed within §§ 39-17-1 and 39-17-2, the statute enumerating the City's franchise power.
Section 39-17-1 outlines the City's power to grant franchises as follows:
 "Any town or city, by vote of the town council or city council, may pass ordinances or make contracts to be executed by its proper officers, *Page 13 
granting rights and franchises in, over, or under the streets and highways in the town or city to the corporations, as are provided for in section 39-17-2, and for the purposes and upon the conditions specified in this chapter."
Specifically, § 39-17-2 enumerates five (5) separate types of franchises the City may grant: distributing water, providing electricity, providing heating gas, operating street railways by motor power, and operating telephones. Plaintiffs main argument is that because towing activity is not included on the enumerated list, the City is precluded from granting a franchise in this area. They contend that the contracts awarded pursuant to the 2006 RFP are tantamount to franchises, and given the exclusive list in § 39-17-2, the awarding of those contracts would be illegal.
In order for this Court to declare the 2006 RFP to be violative of § 39-17-2, it is necessary to determine whether or not the contracts awarded pursuant to the 2006 RFP are, in fact, franchises, as the Plaintiffs allege. A franchise is "a right or privilege conferred by law for the provision of some public purpose or service, which cannot be exercised without the express permission of the sovereign power, such as by legislative grant." 36 Am. Jr. 2d Franchise from Public Entities
§ 1 (2001); see also § 39-17-1. Further, "[i]t is a privilege conferred by the government on an individual or a corporation to do that which does not belong to the citizens of the country generally by common right" Id. In determining the protection afforded a franchise, this Court notes, "[a] franchise is essentially property, and is governed by the same rules as to its enjoyment and protection. . . . It is a property right protected by the Constitution from arbitrary revocation, impairment, or destruction. 36 Am. Jr. 2d Franchise from PublicEntities § 5 (2001). *Page 14 
While the Rhode Island Supreme Court has never directly addressed whether placement on a tow list or contracting to tow for a city or town rises to the level of a constitutionally protected right, several federal courts have. In Piecknick v. Commonwealth of Pennsylvania,36 F.3d 1250 (3rd Cir. 1994), the court found that placement on a wrecker rotation list — created pursuant to a state police policy — was not a constitutionally protected interest because the policy did not have the force of law, as it was not promulgated pursuant to any specific state statute or regulation, and had not been approved by any state agency. Further, in Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995), the court found that because the placement on a list did not arise through some state statute or regulation, it therefore does not rise to the level of a constitutionally protected interest. Finally, the court in Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209 (11th Cir. 1995) rejected the notion that the creation of a wrecker rotation policy, "in and of itself, [could] create a property right. . . ." Id. at 1214. In 2005, this Court came to the same conclusion, citing the above mentioned federal case law, stating:
 "The crucial question in assessing whether there is a property right in such a list is `whether any state decisional law, statute, or regulation having the force of law authorized or mandated creation of the entitlement that plaintiffs claim.' As there is no Rhode Island decisional law, statute or regulation affording [the tow company] such an entitlement, this Court finds that [the tow company] did not have a constitutionally protected property right in remaining on the tow lists." Sterry Street Auto Sales v. Pare, No. 04-5086, 2005 WL 524806 at *3 (R.I.Super. Mar. 3, 2005) (quoting Morley's Auto Body, Inc., 70 F.3d at 1214).
In the instant matter, it is unnecessary to determine whether the Legislature contemplated the list of activities in § 39-17-2 as an exclusive list, intentionally omitting the towing needs of the City. A franchise is a granted property right which carries with it constitutional rights and protections. 36 Am. Jr. 2d Franchise fromPublic Entities § 5 *Page 15 
(2001). As has been determined not only in the federal circuit, but by this Superior Court in 2005, the inclusion and membership on a tow list is not a constitutionally protected right. Therefore, inclusion on a tow list cannot be a franchise, as it does not rise to the level of a constitutionally protected interest. Coming to largely the same conclusion, this Court stated in an earlier opinion that because a "franchise is an irrevocable commitment which rises to the level of a property right in the grantee . . . no exclusive franchise is involved in [the City's establishment of a tow list and] . . . the giving of business to [companies] from this list." Federal Auto Body Works, Inc.v. Cianci, No. 78-1742, 1980 WL 336033 at *2 (R.I.Super. Mar. 3, 2005).
 D. Illegal Tax
Plaintiffs argue that the provision for the percentage referral fee in the 2006 RFP, in addition to usurping PUC ratemaking authority, is the imposition of an illegal tax outside the City's taxing authority. Plaintiffs contend that since money will be transferred to the City from the tow and storage fees set by the PUC, there exists an indirect and discriminatory tax imposed upon the owners of the towed vehicles. Defendants reply by arguing that the referral fee is not a tax but simply a means to defray the cost of implementing the 2006 RFP.
The Supreme Court of Rhode Island has long recognized the "distinction between a tax — which is primarily a revenue-raising measure — and a licensing fee — which is primarily a regulatory imposition." Kent CountyWater Authority v. State (Department of Health), 723 A.2d 1132, 1135
(R.I. 1999) (citing State v. Foster, 22 R.I. 163, 171, 46 A. 833, 835-36
(1900)). The Court in Foster clarified, "[i]f the imposition . . . has for its primary object the regulation of the business, trade, or calling to which it applies, its *Page 16 
exercise is properly referable to the police power; but, if the main object is the obtaining of revenue, it is properly referable to the taxing power." Foster, 22 R.I. at 171, 46 A. at 835-36. Our Supreme Court in Kent County Water Authority adopted a holding from the Supreme Court of California, which delineated the difference between a tax and a fee:
 "`[a]ll regulatory fees are necessarily aimed at raising `revenue' to defray the cost of the regulatory program in question, but that fact does not automatically render those fees `taxes'. . . . If regulation is the primary purpose of the fee measure, the mere fact that the measure also generates revenue does not make the imposition a tax.'" Kent County Water Authority, 723 A.2d at 1135 (quoting Sinclair Paint Co. v. State Board of Equalization, 937 P.2d 1350, 1358 (Cal. 1997) (emphasis in original)).
Plaintiffs' argument that the referral fee imposed by the 2006 RFP represents an illegal tax is unavailing. This Court notes initially that the referral fee paid by the towing companies to the City cannot and will not affect the tow and storage rates charged to the owner of the towed vehicle. As discussed above, those rates are set by the PUC and must be imposed unaltered and uniformly by all towing companies. Section39-12-12. The consumer is totally unaffected. Further, the burden falls upon Plaintiffs to show that the referral fees charged in the 2006 RFP to the towing companies are not related to the costs of implementing the regulatory towing scheme. Kent County Water Authority, 723 A.2d at 1136.
In the face of this burden and the clear rule from Kent County WaterAuthority — that fees charged to offset costs incurred in connection with a regulatory program are not a tax — Plaintiffs have presented no evidence to this Court that the referral fee does not exist to offset costs. In fact, it was a Defendant, Alan Sepe, who testified that the referral fee percentages in the 2006 RFP actually came about after comparing the number of tows in the City and the towing company revenue derived from those tows with the cost to the *Page 17 
City, which includes the payment of and for police, dispatchers, clerks, and other such municipal services. Mr. Sepe testified that the referral fee was not intended to generate extra revenue for the City, but instead existed as a necessary remuneration. Despite Mr. Sepe's testimony that the referral fee money most likely would be deposited into the City's general treasury, that fact alone, despite Plaintiffs' contention, "does not ipso facto convert them into taxes." Kent County WaterAuthority, 723 A.2d at 1136 (citations omitted). "As long as the . . . fee's primary purpose and effect was to pay for the [program's] costs . . . and as long as the total revenues generated by these fees were roughly equivalent to the [program's] costs . . . then such fees are, by definition, an annual licensing measure [and not a tax]." Id.
Accordingly, this Court finds that the referral fee imposed by the 2006 RFP is not an illegal tax.
 E. Bid Process
Lastly, Plaintiffs argue that the bid process and procedure implemented by Defendants pursuant to the 2006 RFP was unlawful. Specifically, Plaintiffs allege the bid process used was "secret" and "non-public," as well as "arbitrary and capricious and a clear abuse of their discretion." Defendants counter by contending the bid process created by the 2006 RFP and executed pursuant to it by the City was well within the scope of allowable discretion.
The breadth of discretion allowed the awarding authority in a public bid process is well settled in Rhode Island:
 "[T]he hurdle to overcome in overturning a decision made by the awarding authority in the public bid process is very high indeed. `It is well settled that, in reviewing the bidding process, the Judiciary will interfere with the award of a state or municipal contract only in the event that the awarding authority has `acted corruptly or in bad faith, or so unreasonably or so arbitrarily as to be guilty of a palpable abuse of discretion.''" Blue *Page 18 
 Cross Blue Shield of Rhode Island v. Najarian, 865 A.2d 1077, 1081 (R.I. 2005) (citations omitted).
Stated differently, "[w]hen officials in charge of awarding a public work's contract have acted fairly and honestly with reasonable exercise of a sound discretion, their actions shall not be interfered with by the courts," and further, this exercise of discretion "shall be entitled to a presumption of correctness" Id. (citation omitted). Courts have been advised to "exercise great care before issuing an injunction vacating an award of either a state or municipal contract," because "government by injunction save in the most compelling and unusual circumstances is to be strictly avoided." Id. at 1084 (quoting Truck Away of Rhode Island,Inc. v. Macera Bros. of Cranston, 643 A.2d 811, 816 (R.I. 1994)). "To rise to a showing of palpable abuse of discretion . . . one must establish that not only were there violations of the law but also that those violations were significant." Blue Cross Blue Shield of RhodeIsland, 865 A.2d at 1084.
Plaintiffs' contention that the bid process and the discretion exercised by Defendants throughout the bid process amounted to an abuse of discretion is unsupported by the evidence before this Court. It is the Plaintiffs' burden to show that Mr. Sepe, as they allege, or any other Defendant, exercised his or its discretion so as to be violative of the standard set in Blue Cross Blue Shield of Rhode Island.Id. at 1081-84. Plaintiffs complaint is particularly devoid of any specific actions which would tend to show a "palpable abuse of discretion." Id. Further, as Defendants note in their memorandum, Plaintiffs filed no formal, specific complaints concerning the bid process with the appropriate city officials or the City Solicitor prior to instituting this lawsuit.
Contrary to the Plaintiffs' bald assertion that the bid process and procedure was "arbitrary and capricious and a clear abuse of discretion," there is an overwhelming *Page 19 
amount of evidence before this Court, primarily through Mr. Sepe's testimony, that shows Defendants exercised their discretion well within the wide boundary set by Blue Cross Blue Shield of Rhode Island. Mr. Sepe testified that prior to the final version of the 2006 RFP, there was extensive research on how other cities dealt with their towing companies. Further, Mr. Sepe indicated that the PPD was an active voice in the construction of the 2006 RFP. He added that the PPD's insight and knowledge of the non-consensual towing business in the City of Providence was a driving force in the creation of the 2006 RFP. Mr. Sepe also noted that the act of dividing the City of Providence into four (4) zones was not a unique idea, and in fact, had been observed as successful in other cities. He also alluded to the creation of a board, which was charged with the task of oversight and review of the RFP. Also, in terms of how towing companies were actually selected, this Court notes that the 2006 RFP contains various qualitative criteria, such as square footage of the storage facility and reputation in the community. Lastly, the Mr. Sepe testified research by the PPD on the bidding companies was performed independently from the persons charged with selecting the eight (8) winning bids.
In light of the abundance of evidence showing the exercise of sound discretion, and the dearth of evidence showing a palpable abuse of discretion, this Court finds the bid process and procedure involved with the 2006 RFP easily satisfies the requirements of Blue Cross BlueShield of Rhode Island. The evidence does not show that in the bid process and procedure the City's conduct amounted to acts of bad faith or corruption, or that it was so unreasonable or arbitrary so as to amount to a palpable abuse of discretion. Blue Cross Blue Shield ofRhode Island. Id. at 1081. *Page 20 
 CONCLUSION
After reviewing the evidence and the memoranda submitted by the parties, this Court denies Plaintiffs' request for a Declaratory Judgment and Injunctive Relief. Accordingly, Plaintiffs' complaint is dismissed, and judgment shall enter for the Defendants. Counsel shall submit an Order consistent with this Decision.
[1] Rhode Island Public Towing Ass'n, Inc. v. Cicilline, et al., No. 2003-2097 (R.I.Super. July 7, 2005). *Page 1